## MANSUR v. MANSUR.
### No. 8594.

Court of Civil Appeals of Texas. San Antonio.
April 8, 1931.

See, also, 21 S.W.(2d) 38.

Boyles, Brown & Scott and Frank G. Dyer, all of Houston, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

FLY, C. J.

Appellant filed a suit for divorce against appellee, but afterwards took a nonsuit, and her cause was dismissed. Appellee filed an answer to appellant's petition and also filed a cross-action against appellant for a divorce, on the grounds of incompatibility of temper and disposition which rendered their living together insupportable; that appellant had in 1925 filed a complaint against him for failure to contribute to the support of herself and the children, of whom there were three, at that time ranging from about four to twelve years of age. Since that time another child has been born. The third ground was that appellant falsely charged that appellee and his brother were concealing the property of appellee so as to prevent her from obtaining any part of it; that appellant had compelled appellee to give a note for $3,000, signed by two sureties, before she would return to and live with them, and had collected $1,000 of the money from the sureties; that appellant had influenced the children so that they did not love him, and that appellant had, pending this suit, filed a complaint that appellee had failed to pay an allowance made by the district court of $100 per month, with the intent to procure his punishment for contempt of court. It is

admitted by appellee that neither of the grounds set out in the petition, standing alone, formed a sufficient basis for a decree of divorce, but it is claimed that, when considered in connection, one with the other, they created a line of conduct and system of action that rendered their living together insupportable, and formed a sufficient ground for divorce under the statute.

■■ Where a systematic course of conduct extending through the years is relied upon by a spouse to justify a divorce on the ground of cruelty, which renders the marriage yoke insupportable, the acts of the marital complaining party must be such as not to have added fuel to the fire and to have created the circumstances which led to the conduct of the other. The criminations and recriminations between the parties had extended through many years. If the wife was guilty of acts of an aggravating and irritating character, the evidence does not disclose a husband faithful and kind. If the wife forsook the home to go back to her relatives, her abandonment of the home seems to follow the departure of her husband from the home, and a failure to provide sufficient maintenance for her and the children. If the evidence is to be credited, he, who was the creator of her condition, left the wife when she went down into the valley of the shadow of death to give birth to four children at times through the years. At this most critical period in a woman's life, when he should have been with her to protect and comfort her, he was gone and only returned when she had borne him a child and had regained her strength and ability to again add to his desire and pleasure. Then would follow weeks of absence upon the part of appellee when the time neared for the culmination of an event caused by him. Inadequate funds to support the wife and children and forced trips to the home of her girlhood followed. If under all these circumstances the wife at times forsook the sweet conversation and humble demeanor of a saint it cannot be a marvel. Several of the incidents relied upon by appellee to constitute the chain which formed a condition insupportable to appellee occurred years before they were alleged in the cross-action, and some of them before the course of life began which, like the Irish conductor's "jerkwater" train, could be described as "off again, on again, gone again." He willingly gave the note to appellant to convince her he intended to support her and the children, until at some time when the wanderlust again moved him to depart. No charge of inconstancy or impurity was brought against the wife. It could not be expected that children would be inordinately fond of a father who often abandoned them and did not make adequate provision for their maintenance and support.

The evidence failed to disclose any effort on the part of the appellant to alienate the affections of the children from the wandering father. If, as asserted by appellee, appellant hurled a bottle at him, he in turn replied with a dinner plate. If she has sinned, he is in no position to cast the stones of condemnation and destruction at her.

We hear men and women and complacent judges, urging severing of the marriage ties and destruction of homes because couples are not as happy as they might be, but there is no law, human or divine, outside of communistic Russia, that sanctions divorces on such grounds. The day of companionate marriages, which is a mild modernistic name for a baser temporary union of the sexes, has not yet arrived in America.

As hereinbefore stated, most of the causes assigned for a divorce were condoned, a child being begotten and born after most of the links had been destroyed by reconciliation and the chain of studied insults and injuries claimed by appellee so battered and dismantled as to amount to nothing upon which to base the severing of the marriage ties. The record fails to reveal any affection for the children upon the part of appellee, and it cannot be expected that the children would have any affection for him, but he should not be allowed to evade the duty devolved upon him of contributing to the support of the children and their mother.

The judgment is reversed, and judgment is here rendered that the divorce be denied and appellee pay all costs of suit.