**BOTELLO v. BOTELLO.**

No. 11381.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 2, 1944.

O. B. Garcia, of Brownsville, for appellant.

H. B. Galbraith, of Brownsville, for appellee.

MURRAY, Justice.

This suit was instituted by A. G. Botello seeking a divorce from his wife, Guadalupe G. Botello, upon the grounds of cruel treatment.

The trial was to the court without the intervention of a jury, and after hearing the evidence the court granted plaintiff a divorce. The custody of their three minor children was given to defendant and plaintiff required to pay the sum of $45 per month for their maintenance, support and education. From this judgment Guadalupe G. Botello has prosecuted this appeal.

Appellant's second point is: "The error of the court in granting a decree of divorce to plaintiff husband on wholly insufficient evidence which does not meet the requirements of being 'full and satisfactory' as contemplated by Article 4632." We sustain this point.

Plaintiff, in supporting his charges of cruel treatment, testified that his wife quarreled with him about staying out late at night. She accused him of going out with other women. She went to where he worked and cursed him, calling him a "pimp" and a "son-of-a-bitch" in front of his boss. About three months before the suit for divorce was filed he went to their home to see their children and he and defendant got into a fight and she threw a bottle at him, called him a son-of-a-bitch and called the officers; the police came, found out that she was wrong, and told him not to come to the house again. Appellant denied that she had called him a "pimp" or a "son-of-a-bitch."

On cross-examination, appellee admitted that he had been taking a woman by the name of Raquel Pina to theaters, restaurants, public places, bull-fights, etc., and had been with her on the streets; that he took her out mostly at night, and that this had been going on for about two or three years. He further stated that this relation was purely "social" and that he never had illicit relations with her. Two letters were introduced in evidence admittedly written to appellee by Raquel Pina. From the first letter it appears that Raquel Pina offers to leave town if appellant should find out about her and appellee; that she needs three dollars to pay some bill, and wants appellant to give her the three dollars; that she is worried because what she and appellee talked about the "other day" is true, that she does not feel so good and that she knows she is because she just got up from bed "that time." In the second letter she berates appellee for not replacing a ring of hers that he lost, and warns him to do so or else find out what she "will do." Appellee, while admitting he received these letters from Raquel Pina, never attempted to explain away the implications contained therein.

Appellant, after denying charges made against her by appellee, testified that she and her husband had lived happily together until about three years prior to the filing of the divorce suit, at which time he started to run around with the other woman, Raquel Pina; that Raquel Pina was the cause of the trouble between herself and husband and that she believed that if Raquel Pina was out of the way she and her husband could still get along.

Under appellee's own admission that he was keeping company with Raquel Pina, it is little wonder that appellant became fussy and quarrelsome. It would have been remarkable if she had been otherwise.

We conclude that the evidence is far from "full and satisfactory," as is required by Article 4632, Vernon's Civ.Stats., but, on the other hand, was entirely insufficient to support the judgment of divorce.

In De Fierros v. Fierros, 154 S.W. 1067, this Court said:

"The seriousness of the offenses complained of should be considered within the light of the surrounding circumstances, and, before the wife's acts, committed under the spur of violent jealousy, are visited with the punishment of divorce, it should at least appear that the husband is without grave fault, or that the wife's suspicions are groundless."

In Mansur v. Mansur, 37 S.W.2d 846, Chief Justice Fly, speaking for this Court, said:

"Where a systematic course of conduct extending through the years is relied upon by a spouse to justify a divorce on the ground of cruelty, which renders the marriage yoke insupportable, the acts of the marital complaining party must be such as

168

not to have added fuel to the fire and to have created the circumstances which led to the conduct of the other."

The judgment of the trial court will be reversed and judgment here rendered denying the divorce.