## BLAKE v. BLAKE. (No. 7190.)

(Court of Civil Appeals of Texas. San Antonio. June 11, 1924. Rehearing Denied July 1, 1924.)

**1. Divorce ⬤�señ127(3)—Testimony of spouse requires material corroboration.**

Under Rev. St. art. 4633, material corroboration is required when one spouse testifies against the other.

**2. Divorce ⬤�señ27(1)—Statute strictly construed to permit divorce only when living together rendered "insupportable."**

Rev. St. art. 4631, as to ill treatment, rendering living together insupportable, should be strictly construed to mean only such excesses, cruel treatment, or outrages as would render living together "insupportable," meaning unendurable, intolerable, and insufferable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insupportable.]

**3. Divorce ⬤�señ184(6)—Evidence must be full and satisfactory to appellate court to permit decree of divorce to stand.**

To justify a divorce, evidence must not only be full and satisfactory to trial judge, but also full and satisfactory to appellate court in order to permit decree to stand.

**4. Divorce ⬤�señ130—Evidence of cruelty held insufficient.**

Evidence of cruelty *held* not sufficient to support decree.

Error from District Court, Bexar County; Robert W. B. Terrell, Judge.

Action for divorce by Sophia Jordan Blake against D. H. Blake. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

T. M. West, of San Antonio, for plaintiff in error.

Newton & Woods, of San Antonio, for defendant in error.

FLY, C. J. Defendant in error applied for and obtained a divorce from plaintiff in error, on the ground that living with him as her husband was insupportable, detailing a number of his habits, characteristics, and manner of conversing with her to substantiate the charge. The court heard the cause, the adverse parties fully airing their marital grievances, and to some extent, at least, have been supported and corroborated in their respective statements. The divorce was granted.

The evidence discloses that the married life of the parties was not as placid and peaceful as a honeymoon, but, even if all the testimony of the wife be true, it affords a rather flimsy excuse for destroying what at one time was deemed by a majority of the American people to be the most sacred and important of all contracts. By many it is considered more sacred than a contract. She was not, however, corroborated or sustained in any important and material particular by any witness introduced by her for that purpose, and in the final analysis it seems to be the case of an aggressive woman, who is no amateur in divorce courts, as she has already had five husbands, two of whom died from accidents, two of whom were divorced by her, and now she is seeking surcease of sorrow from her last marital venture in the convenient divorce tribunal. The version of the matter given by the wife shows no doubt a shiftless husband, who dislikes to leave the shelter of his spouse's home, who perhaps is not seriously afflicted with hydromania, so far as the application of water to his outer person is concerned, who is not a Chesterfield in his manners and in the language used to his wife, and who probably is not as portly and plump as his consort would desire, and who did not properly respond to her treatment for leanness and emaciation. He denied all these charges. It is true that he refused to eat at her table of food cooked under her orders, giving as a reason that he suspected her of endeavoring to poison him. She stated she was always kind to her husband, although she ordered him from her place, and admitted that she gently reminded him "that he ate like a hog." She stated that, if he treated her "right, he will have a good partner," and the facts undoubtedly show that she was the senior, managing and militant partner. She gave as evidence of her goodness as a partner: "I treated him royal, I gave him the best of everything to eat, and tried to put a little flesh on his bones, and done everything a wife could do."

Defendant in error testified to various immaterial trifles and trivialities, the only matter really material in her whole testimony being that her husband had charged her with incontinence, and her own testimony did not sustain that charge. She stated that in answer to her reproaches about her husband staying out at night he had replied that it was not as bad as prostitution. This is the only charge that was ever made by plaintiff in error as to the chastity of his wife, and that was not directly applied to her, and he strenuously denied ever thinking or saying any such thing, and no witness corroborated her in her statements, and from the fact that she made no complaint of the language and continued to live for a long while afterward with her husband it may either be inferred that no charge was made against her chastity, or that it caused no disagreeable impression in her mind. She said that the cook, who she called "my girl," heard her husband make the accusation, but the girl did not swear to it when she testified. Mrs. Wagner, her nurse, who was her friend, would not corroborate her as to the vile habits or the indecent language of plaintiff in error, although she was in the house for

quite a while. Even the complacent cook, of 18 years standing with defendant in error, failed to corroborate any of her material statements and all the testimony tended to contradict rather than uphold the testimony of defendant in error.

[1] The law instead of permitting, as it has done in Texas, the spouses to testify against each other, opening up the highest temptation for perjury, disregarding the wisdom of a thousand years, and trampling under foot the most sacred relations of man and wife, should at least put some kind of restraint on unbridled false swearing by requiring corroboration of either spouse in some material manner before the destruction of the marriage relation be decreed. The husband or wife is placed by the statute in the same category as other witnesses, who have strong inducements and temptations flowing out of compelling interests or desires, and trial courts should, and appellate courts usually do, weigh the evidence of the interested spouse with exceeding care and extreme circumspection. There is every inducement to magnify or even manufacture circumstances; those magnified being trivial and of little import when they happened, and those manufactured being necessary to obtain the desired end. Probably no enactment by a Legislature has been more prolific in the production of perjury and false swearing than article 4633 of the Revised Statutes of Texas, and certainly no statute has destroyed more homes and families than the one in question. In the interest of the marriage relation, homes, and children the law in question should be repealed, but, as that cannot be hoped for in the light of the experience that restraints on loose living are rarely restored when once destroyed the statute should endeavor to protect coming families and children by requiring material corroboration when one party to the marital pact testified against the other.

[2-4] The prevalent idea seems to be that, whenever a couple shall determine from any cause that their living together is insupportable or rather embarrassing, they can enter a trial court and have the marriage dissolved, and there is perhaps some foundation for the opinion. However, the statute does not provide that, when the living together of man and wife is, according to their testimony, wish, or desire, insupportable, a divorce is given, but it says:

"Where either the husband or wife is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable." Rev. St. art. 4631.

That provision should be strictly construed, and not so as to mean incompatibility and so as to include every whim or love of change, or the desire to marry some one else, or anything except such excesses, cruel treatment, or outrages as would render living together insupportable, meaning unendurable, intolerable, insufferable. A strict construction of the statute aimed at the destruction of the marriage ties has even been followed by this court, during its existence, and other Court of Civil Appeals. Bush v. Bush (Tex. Civ. App.) 103 S. W. 217; Ryan v. Ryan (Tex. Civ. App.) 114 S. W. 464; Lohmuller v. Lohmuller (Tex. Civ. App.) 135 S. W. 751; Bingham v. Bingham (Tex. Civ. App.) 149 S. W. 217; Knight v. Knight (Tex. Civ. App.) 220 S. W. 609; Hubbard v. Hubbard (Tex. Civ. App.) 231 S. W. 160. The evidence in a divorce suit may be "full and satisfactory" to the trial judge, but that is not sufficient; it must also be "full and satisfactory" to the appellate court, or a decree of divorce will not be permitted to stand. Erwin v. Erwin (Tex. Civ. App.) 40 S. W. 53; De Fierros v. Fierros, 154 S. W. 1067; Smith v. Smith (Tex. Civ. App.) 218 S. W. 602. As said by this court in the cited case of De Fierros v. Fierros:

"In suits for divorce, neither the trial court nor the Court of Civil Appeals is bound by the findings of the jury upon questions of fact, but may within their sound discretion disregard the jury's verdict and render the judgment that justice and good morals require."

Undoubtedly this court can pass upon the facts upon which a trial judge has decreed a divorce, and, if the same are not deemed "full and satisfactory," although supported by some facts, may set aside the judgment of the lower court.

The judgment is reversed, and the cause remanded.