### BURNS v. BURNS.
### No. 10034.

Court of Civil Appeals of Texas. Galveston.
Nov. 20, 1934.

James H. Phipps, of Galveston, for plaintiff in error.

Geo. P. Prendergast, of Galveston (William Stiglich, of Galveston, of counsel), for defendant in error.

GRAVES, Justice.

The learned trial court granted the defendant in error a divorce from the plaintiff in error on the ground of cruel treatment, filing in support of the decree these findings of fact and conclusions of law:

"Findings of Fact.

"I find as a fact that the plaintiff Edward F. Burns, at the time of the filing of this suit, was an actual bona fide inhabitant of the State of Texas and had been such continuously for more than twelve months immediately next preceding the filing of this suit; and also, that plaintiff resided continuously in Galveston County, Texas, for more than six months immediately next preceding the filing of this suit.

"I find that all of the material allegations contained in plaintiff's second amended original petition were established upon the trial of this cause to the satisfaction of this Court.

"I find from the evidence to my satisfaction that defendant was guilty of such excesses and cruel treatment toward plaintiff as to render their further living together as husband and wife insupportable.

"I find from all the facts and circumstances in evidence in this cause that plaintiff gave the defendant no cause or justification for the acts of cruelty committed by defendant against plaintiff.

"Conclusion of Law.

"I therefore conclude as a matter of law that plaintiff is entitled to a decree dissolving the bonds of matrimony heretofore existing between plaintiff and defendant."

This court will reverse that judgment and here render the cause in plaintiff in error's favor, upon its own conclusion, after a painstaking reading of the statement of facts, that the evidence received was not "full and satis-

factory" within the meaning of R. S. art. 4632.

In an effort to uphold the granting of the divorce, the defendant in error contends that this court may not go into the evidence for itself, for the alleged reason that the findings and conclusion thus made below were not challenged by objection, or bill of exception, presented there by plaintiff in error; while that is ordinarily the rule, it does not obtain when the complaining party excepts to the judgment and causes the exception to be noted of record in the judgment entry, which was done in this instance. 3 Texas Jurisprudence, pars. 162 and 415, with cited authorities.

The able counsel for the plaintiff in error seems to have tried the cause below upon the theory that, in the absence of actual personal violence, cruel treatment to justify a divorce must have been of such character as to affect injuriously the health, morals, or physical condition of the party upon whom it was visited, but the recent opinion in McCullough v. McCullough, 120 Tex. 209, 36 S.W.(2d) 459, 463, makes it clear that such was never the rule approved by the Supreme Court of Texas; on the contrary, as expressly adopted by the court itself, it thus declares the true rule: "We therefore hold that the excesses, cruel treatment, or outrages provided in our statute as a ground for divorce are sufficient if they are of such a nature as to render further living together insupportable, and that without regard to whether such treatment is of such a nature as to threaten the impairment of the physical health of the wife. Of course the sacredness of the marriage relation should be kept in view, and divorces should not be granted on trivial matters or disagreements." See, also, 15 Texas Jur. p. 461, par. 22, footnote 3, and cited cases.

It is true, we think, that the husband in this instance alleged a good cause of action for divorce; his two most serious charges, perhaps, being: (1) "That many times during the period extending from the month of January, 1931, defendant has cursed and abused him, calling him the vile name of son-of-a-bitch"; (2) "plaintiff further alleges that defendant has violated her marital obligations, since the date of the separation of these parties in the month of July, 1932; that the defendant has failed and refused for over a period of two years to co-habit with him as his wife"; but even these he failed to prove as alleged.

In the first place, while in his testimony he sought to adduce vexations running back over a long period of eight or ten years, in his petition by specific averments, with the exceptions just quoted in (2), supra, and a further charge that she accused him in her answer filed in this suit on January 13 of 1933 of supporting and entertaining other women, he limited the acts of cruel treatment upon which he depended to the period specified in the first of these quotations, that is, from January of 1931 up to the month of July thereof; but, when the detailed evidence in his behalf, presented solely by himself, his brother, and a woman neighbor, is looked to, the most that appears therefrom, especially during the six-month period referred to, is such petty quarreling, misunderstandings, and "trivial matters or disagreements" as the Supreme Court says in the opinion quoted from supra does not warrant the granting of a divorce. Of course, the two quoted charges are serious ones, but, when catechized about them on the stand, on cross-examination he corrects the statement in his first-quoted allegation by saying "she called me a bitch," adding that this was only done in the presence of his wife's mother and nobody else, being mostly when the three of them were in the automobile, further admitting that he could neither remember the time nor the occasion of any one of these statements. Both his wife and her mother testified that no such statements were ever made to him at all, the mother further saying that, although she had lived in the same house with them ever since they had been married, she never saw them fussing or quarreling much, never heard her daughter use the language attributed to her, nor ever heard her curse him in any way, saying that they got along all right until 1931.

As concerns the second of his copied charges, he likewise reduced it to a practically harmless thing in his own testimony. In this instance he was affirmative in voluntarily saying that he meant no reflection upon her virtue and did not mean to be so understood. When asked then in what way she had violated her marital obligations, he said: "When she left here, when she went to San Antonio. She wanted to leave Galveston and she wanted to go to San Antonio, and I never said anything to her, and she said 'I am going out of the town,' and I said all right, if she wanted to get out of town she could go." His wife returned from that visit at San Antonio to Galveston, but only remained a few days. When further asked the reason for her returning to San Antonio, he answered:

"I don't know. From what I could gather there was—she said she had somebody in San

Antonio, but they didn't want her mother or something.

"Q. The defendant told you that? A. Yes, sir, she said she could get somebody. She never had anybody. I don't mean that she had anybody. I don't want you to misunderstand me that way."

It thus conclusively appears from his own testimony that the violation of marital obligations he so specifically alleged was meant merely to cover her going to and staying at all at San Antonio away from him.

There is not a scintilla of evidence in the record of any physical violence or threat of it upon the part of the wife—nothing but the continued lack of complete harmony and a failure to get along smoothly that the Supreme Court in the McCullough Case terms "trivial disagreements not justifying a divorce" (see, also, Speer's Law of Marital Rights, p. 787, to the same effect), and the calling of him "bitch," which alone, even if it must be accepted here as true, presents no ground for divorce in the opinion of this court, especially in the utter absence of any further proof that it was a studied course of conduct, deliberate, long-continued, malicious, or productive of such unusual effect upon his peculiar sensibilities as rendered their further living together insupportable. 15 Texas Jur. p. 455, and page 462, par. 23, and cited authorities.

And, finally, whatever sin there was committed against him by her in having thus called him a "bitch" perhaps a few times and without any showing of premeditation, and having failed to agree with him about household affairs and expenditures of money therefor, or in having gone to San Antonio and remained away from him the several months' time, it conclusively appears that he not only forgave and condoned it all, but that it has never since been repeated; for that reason also the divorce should have been refused. 15 Texas Jur. p. 498 et seq.

The evidence is undisputed, both from the letters themselves and from his admissions on the stand, that he wrote, sent, and meant them all, during practically the whole time the plaintiff in error was in San Antonio, following the occasions on which he testified she called him a "bitch," that is, throughout the period from Thanksgiving Day of 1931 to May 20 of 1932; that he wrote her such endearing letters as a solicitous husband would do, sending her money the same as he had always done, expressing his regret at being unable to be with her, as well as his concern for her mother, and in no way intimating that he was not all that while the devoted husband the words he was so writing indicated him to be; these letters, although she seldom, if ever, replied, thus having continued in a steady stream up until during the month of May, 1932, show that he meant his previously quoted statement that he had not even objected to her going to San Antonio. Wherefore, in view of all these facts, this court cannot go to the extent of holding that one epithet which, like defendant in error himself said with reference to all of their bickerings and disagreements, without any attempt to account for them, "just happened," should divorce these two.

The same thing may also be said of the added, very general, averment that she accused him of supporting and entertaining other women; obviously, even if it be assumed to have been meant to charge him with adultery, it was no cause for divorce under our authorities; 15 Texas Jur. p. 463, par. 23, with footnote citations.

Much is made further of the testimony of the woman neighbor of the parties, above mentioned, who answered questions as to whether or not she had heard the wife say the husband was no good, that she had heard her use that expression in connection with comments on his failure to succeed in business, just like other business men were no good who did not so succeed, and that she had added: "Whatever he does, he must support me and my mother." On further inquiry, however, this witness stated that this all occurred subsequent to the filing by defendant in error of this divorce suit against his wife. Plainly neither this nor any other testimony of a supporting witness corroborated the husband in anything that amounted to a legal ground for a divorce in his behalf.

Since under the cited statute the responsibility is upon this court to determine for itself—notwithstanding the findings made below—whether the evidence is sufficiently full and satisfactory to justify the divorce (Moore v. Moore, 22 Tex. 237; Lohmuller v. Lohmuller [Tex. Civ. App.] 135 S. W. 751; Blake v. Blake [Tex. Civ. App.] 263 S. W. 1075; Aylesworth v. Aylesworth [Tex. Civ. App.] 292 S. W. 963), and since we conclude that presented here is not, the reversal and rendition is ordered.

Reversed and rendered.