### YOSKO v. YOSKO.

No. 9738.

Court of Civil Appeals of Texas. San Antonio.

Oct. 28, 1936.

Wiseman & Murray, of Floresville, for appellant.

O. F. Burney, of Floresville, for appellee.

BOBBITT, Justice.

This is a most unusual and unique proceeding instituted for the purpose of dissolving the marital relations between a man and woman who have been husband and wife for a half century. It was brought by the husband, as he testified, because "she wanted always this divorce; going to get divorce; I just sued for her because she wanted it." The wife, however, in her answer flatly denied such to be the case, and she testified through an interpreter on direct examination as follows: "She don't want any divorce, she married in the church and didn't want any divorce;" and on cross-examination: "She don't want the divorce."

The appellee, George Yosko, alleged that he married Louisa Sekula, in Wilson county, on January 27, 1885, and that "they continued to live together as husband and wife until September 12, 1934." George filed this suit for divorce in Wilson county, September 24, 1934, 49 years thereafter. They lived on a farm near the town of Poth. They had no children. Appellee alleged that by reason of the cruel and harsh treatment and improper conduct of his wife he was forced to permanently abandon her on September 12, 1934, and "since that time they have not lived together as husband and wife." He alleged that about 47 years before, in 1886, to be exact, appellant began a course of cruel and tyrannical treatment "which continued until plaintiff was forced and compelled to abandon defendant as aforesaid." Appellee then pleads in detail his charges of wrongful conduct on the part of appellant, including threats of violence, abusive language, personal attacks, impairment of his health; refusal to wait upon him when sick; and refusal to permit his relatives to visit them. He pleaded that he had recently become old and helpless, and that he was in fear of death or serious bodily injury at her hands; that he left their house in June, 1934, but returned in three months, not to live with his wife, but to occupy his own home, but by reason of appellant's mistreatment he was compelled to permanently abandon her in September, 1934, and "since said time he and defendant (appellant) have not lived together as husband and wife."

Appellee then set out at length a description of their separate and community property; asked that upon dissolution of their marriage relations their alleged separate property be set aside to each, respectively, and the community property divided between them.

By pleadings and through testimony appellant denied all of such allegations by appellee, including the claim of appellee that a large amount of the property was his separate property.

The cause was tried by the court, without the aid of a jury, and judgment was rendered granting appellee a divorce and adjudicating the property rights of the parties, and assessing all costs against appellee. At the request of appellant, the court filed findings of fact and conclusions of law.

Appellant contends that the judgment is not supported by the evidence; is contrary to law under the evidence; that the findings of fact by the trial court are contrary to and not supported by the evidence or the pleadings of appellee; and that the cause should by this court be reversed and rendered.

The findings of fact by the trial court material to the questions raised, and which will determine this appeal, are as follows:

"First. The Court finds that the plaintiff and the defendant were married in 1885 and from 1885 up until June, 1934, the plaintiff and the defendant have led a rather drab and uneventful life, however punctuated at intervals with many fights and disagreements between plaintiff and defendant; that the plaintiff was 79

years of age in September, 1934; that the defendant was 70 years of age at the time of the trial; that the defendant and the plaintiff have really not been living together as wife and husband for many years.

"Second. That the plaintiff is alert in mind but extremely feeble in health and· that he is practically blind and has been for several years; that he is unable to walk alone and has to be assisted in finding his way about; that the defendant, while being 70 years of age is rather alert and active for her age. * * *

"Sixth. That for the past several years the home life of plaintiff and defendant has been very unhappy, to such an extent that the plaintiff lived out in the barn part of the time and stayed with his adopted son, Peter Yosko, part of the time, and that the plaintiff has been ill and is now ill and unable to care for himself, and that the defendant does not show the interest in him which she should as his wife and has not shown such interest for a number of years. * * * .

"Ninth. The Court finds that the defendant would not mind if the plaintiff left her and never came back, provided nobody blamed her with his leaving and that all forms and kinds of affection between the two have long since died; that no children were born of the marriage of the plaintiff and the defendant."

■ The judgment in this case is based upon the general allegation of "excesses, cruel treatment and outrages of such a nature as to render the living together of the parties insupportable," and there must be competent and sufficient evidence to "fully and satisfactorily" establish such allegation to justify the judgment on such ground; otherwise the application for divorce should be denied. The marriage contract is not in the class or category of ordinary civil contracts, relating to property and its ownership and use; it is a different and higher relationship and agreement in which the public is vitally concerned. More strict rules and stronger evidence is, and should be, required to dissolve the marital union and contract than would be sufficient to justify the setting aside of an ordinary contract. Article 4632, R.S. 1925; Parks v. Parks (Tex.Civ. App.) 55 S.W.(2d) 242; Aylesworth v. Aylesworth (Tex.Civ.App.) 292 S.W. 963; Blake v. Blake (Tex.Civ.App.) 263 S.W. 1075, and authorities in each cited.

■ In such cases the findings of a jury, if a jury is used, or the findings of the trial court, on the facts, are not binding upon the appellate court, as in ordinary proceedings. Aylesworth v. Aylesworth, supra; Jasper v. Jasper (Tex.Civ.App.) 2 S.W.(2d) 468.

■ The existence and application of such rule requires, necessarily, that the appellate court examine the record carefully to ascertain if the evidence is sufficient to sustain the judgment; if, as here, the evidence of cruel treatment "fully and satisfactorily" establishes such ground for divorce. In this connection, the happening of the alleged acts of cruelty, in point of time, the mutuality of the acts and conduct of the parties, their subsequent living together, and the corroboration of the parties' own testimony, ·are all matters which must be considered in determining whether or not the evidence is full and satisfactory. Burns v. Burns (Tex.Civ. App.) 76 S.W.(2d) 821; Lawson v. Lawson (Tex.Civ.App.) 293 S.W. 336.

In this case appellee testified that the principal acts of cruelty on the part of his wife occurred many years prior to the institution of this suit. He stated on the witness stand that in 1887,—47 years before he finally abandoned his wife,—she called him some uncomplimentary names, and the "first fight was when I went after my team, when I got back to the house she was watching with a butcher knife; I caught her hand and got the butcher knife out of her hand, then for days she was all right, seven years, in September she fight again." Then in 1916, when appellee was ill, his wife pulled the cover off his bed and refused to give him medicine. We then pass to 1919, when he testified his wife "got to fighting on account of me feeding the hogs watermelons when she wanted them for her chickens; she jump on me when I fry beef steak and she come and take the pan away and I leave the cover drop on the floor, because she never cooked. I took her by the hair, she cut me with butcher knife; I grab her two or three times. I went out the door and then run back to the house to get a gun, because she said she shoot me. I go get the gun." It seems this row and round of connubial battles of 1919, was about a draw. It seems that about this time in their married life appellee stayed out in the barn at night for quite some time.

Then the next incident of particular cruelty related by appellee occurred some 11 years later, in 1931, when he says she "run him off" from home and he stayed with his adopted son, Peter, for some months. Then he says, in June, 1934, he was compelled to leave home again on account of his wife's refusal to cook for him and otherwise attend him in his old age. He testified that he was afraid of his wife, "she wouldn't take care of me, blame me, might push me or kill me, or break my leg."

These are the chief acts of cruelty which appellee relies upon to substantiate the judgment. Appellant positively denied most of these charges by her husband and testified that she never cursed or abused her husband; that "she always treated him nice, but he didn't"; that she never threatened to kill him, never had a gun in her life; always waited on him when he was ill. She said he often got mad around the place and often left home for different periods of time. She stated that she never desired, and never requested her husband to sue for a divorce; that she always remained at home, and was living there at the time of the trial.

The record shows that appellee, after an absence of some weeks, walked back to his home, on September 4, 1934, and remained there with appellant until the latter part of November, while this suit for divorce was pending. According to appellee's own testimony he stayed at home all during such time and at that time told his wife: "I told her you can't put me out and even I can't put you out; this place is for both of us."

There was other testimony of the same general nature. It is not shown by appellee that he did not provoke and participate in the various acts or occasions of alleged cruelty on the part of his wife. Clearly, most all of the specific charges of physical violence which he makes against his wife, even if true, under his own testimony, have long since been condoned. The very fact that appellee felt it necessary to go back as far as 47 years to point out specific acts of alleged cruelty in this action for divorce is evidence of a lack of real justification or basis for the allegations he makes in his petition here filed against the woman who has lived with him as his wife for nearly 50 years. The record shows that appellee was at the old homestead long after this suit was filed;

that he left, or was taken to some other place the latter part of November, 1934; this suit was tried in December, 1934. It is true he was 79 years of age. It is also true that his wife was three score and ten, and it is not shown that she was physically able to give appellee the attention of which he complains in his old, decrepit days.

We have carefully read the entire record before us, and it is clear that the evidence of cruel treatment offered by this man against his wife falls far short of that "full and satisfactory evidence" which the law plainly requires to sustain the allegations made, and to justify the judgment entered in this cause.

█ It is particularly important, we think, that appellee himself testified that he simply got tired of the situation, and filed this suit because his wife wanted and was always talking about a divorce. The wife denied this statement in toto, and swore that she did not want a divorce. All such testimony and the other evidence before us in this proceeding is conclusive that appellee has not sustained his allegations. Burns v. Burns, supra, and cases cited.

Furthermore, it is plain from the record before us that the findings of fact by the trial judge are not sustained by the evidence. It is also true, we think, that the findings of the trial judge, as made, are insufficient to authorize or support the judgment entered. It is apparent, also, that the findings of the trial court are contrary to the express allegations of appellee in both his original and amended pleadings.

The court found "that the defendant and plaintiff have really not lived together as wife and husband for many years:" Appellee alleged that they were married January 27, 1885, and "continued to live together as husband and wife until September, 1934, * * * when he permanently abandoned her * * * and 'since that time' they have not lived together as husband and wife."

█ As a matter of fact, the trial court makes and finds no facts which are sufficient to support a judgment for divorce on the grounds of cruel treatment. The finding that the "parties have led a rather drab and uneventful life, however, punctuated at intervals with fights and disagreements; and that appellee was seventy-nine and appellant seventy years of age" are certainly insufficient upon which to base a judgment of divorce on the alleged ground of cruel

treatment. Likewise the finding that appellee is alert in mind, but feeble in health, and almost blind and unable to walk alone, that appellant is 70 years of age and rather alert and active for her age, etc., may be unfortunate and regrettable conditions on the part of both litigants, but such findings in no way support or sustain the judgment. The fact that the parties "have been very unhappy" for several years, that appellee lived in the barn for a while 15 or 20 years ago, that appellant does not show much interest in appellee, etc., are not such findings as will or can support the judgment for divorce on the charge of cruel treatment, the sole ground relied upon by appellee in this case. The trial court makes no definite findings of acts of cruelty on the part of appellant, which can sustain the judgment entered in this cause.

Inasmuch as the judgment of the trial court granting appellee a divorce cannot be sustained for any reason asserted in this appeal, and the judgment granting the divorce must be reversed, it is not necessary or proper to discuss any of the questions relating to the property owned by the parties.

For the reasons stated, it becomes our duty to reverse and render the judgment of the trial court, and it is so ordered.

MURRAY, J., did not participate in the decision of this case.