## HYATT v. HYATT.

### No. 10676.

Court of Civil Appeals of Texas. Galveston.

Dec. 9, 1937.

Kahn & Branch and James A. Copeland, all of Houston, for appellant.

Sam T. Cook, of Houston, for appellee.

GRAVES, Justice.

The learned trial court, sitting without a jury, granted the appellee a divorce on the sole ground of cruel treatment, filing neither findings of fact nor law in support thereof.

This court will reverse that judgment and here render the cause in appellant's favor upon its own conclusion, after a painstaking reading of the entire statement of facts, that the evidence received was not "full and satisfactory" within the meaning of R.S. art. 4632.

Since the trial petition upon which the court acted declared upon no other cause of action than such cruel treatment according as it is specified in subdivision 1 of R.S. art. 4629, the sufficiency of the evidence to support it constitutes the sole inquiry upon the appeal.

What is thought to be a sufficient and reasonably accurate résumé of the material testimony of the appellee himself, which constituted well-nigh all of any probative force that he offered, is thus taken from the appellant's brief:

"That he married appellant on December 3, 1931, and separated from her on March 24, 1936, because it was no longer possible to live with her and have any peace; that she ridiculed him before the public, criticised him continually, and called him vile names in German and English, such as a 'brute', and 'beast', and 'scheit'. That she criticised him and all of his friends because they were Americans. That he got along with her very well for about a year and a half, but since that time Mrs. Hyatt was not happy and continued to grow more unhappy; that she was displeased, melancholy all of the time, and continued to show her hatred, and talk about Germany; that she hated Americans, and said how terrible everything was over here and how wonderful everything was in Germany; that the people over there were so social and the people in the United States were 'roughnecks', and that appellee was a 'roughneck'; that she stayed by herself, did not want to go out, his friends could not come

over to see him, and that when they went out to see them, she would talk about Germany and criticise Americans, and they stopped going anywhere.

"That appellant quarreled with the neighbors almost every place she lived, but he admitted under questioning by the court, that it was he who first quarreled with the neighbors; that he objected to the noise of his neighbor's radio, and he went to his landlord and persuaded him to make those neighbors move. That later appellant quarreled with the next door neighbor, who had a cat, as they had several female cats that howled all night, and she prevailed upon appellee to poison the neighbor's cat, which he, appellee, did, and that made bad feelings with his neighbors; that appellant called the Humane Society, because the neighbor in the back spanked a puppy belonging to him. That appellee had stomach trouble and got some milk-goats; that the goats made it unpleasant for the neighbors, who quarreled with appellee and appellant, so they decided to move to Garden Villas, and after moving there, appellant quarreled with two of their neighbors.

"That it was in the late summer of 1935 that appellant began to quarrel with him a great deal about their money-affairs; that she objected to him giving his child, by a former wife, money, and to his spending $10.00 per month on doctor's bills; that she said his salary was being distributed into too many different quarters, that there was not enough of it, that she did not think that appellee was giving her enough money, and demanded that he give her his pay-check and let her handle the finances; that she argued with him in the evenings about these finances until he got sick headaches, was afraid he would lose his job on account of such illness and worry, and was in the position that he either had to leave appellant or quit his job; that he thought he was capable of handling his own affairs; that she insisted that he leave the house, as he was a disgrace to her and the family, and told him that he either had to get out of the house, or change his ideas to compare with hers.

"That about the 20th of December, just prior to Christmas of 1935, she accused him of going with other women, which accusation was false, and that since he saw a quarrel about this was coming up, he decided to go to a show alone, and told appellant that she could not go with him; whereupon, she grabbed the key out of the car, and he had to take hold of her and 'lift' her out of the car to keep her from going with him, but that she did not strike him on that occasion. That on Christmas Eve of 1935, appellant left home and did not return until ten or eleven o'clock the next morning, and told him about ten days later that she had spent the night in town with their former next-door neighbors. That prior to their marriage they had agreed to bring his baby daughter, by a former marriage, home to live with them, and although appellant often requested him to do so after their marriage, he could not bring the child here because he was afraid to trust appellant on account of her outbursts of temper.

"Mrs. Hyatt thought it would be a disgrace for them to separate and told appellee she did not want to separate, because the German people did not do things like that, and it was a disgrace if they did. That, nevertheless, he knew he could no longer stay in the same house with her, and for that reason he bought, and moved out to, the Fairbanks property, but that Mrs. Hyatt was not satisfied with the Fairbanks property, and would not agree to sell the Garden Villas home and move with appellee.

"That so far as he knew, Mrs. Hyatt was a good, virtuous woman, and that she did not run around with other men; he further, unqualifiedly, testified that he condoned, overlooked, and forgave appellant's actions and conduct in fussing at him and calling him bad names; his testimony being: 'I continued to forgive her and thought eventually it would be all right.' That nothing happened on the day he left appellant; that he left because she told him to go, but that he had made up his mind to leave weeks before that; that up until the date of their separation on March 24, 1936, he had continued to live with appellant in their Garden Villas home, and that she cooked his meals for him, and took care of his goats when he was sick in bed, which was about once a week, and that she was an excellent housekeeper."

While one of his daughters by a former marriage and some two or three of his neighbors also testified in his behalf, no one of them corroborated him in his own specification of any act or conduct on the part of appellant, if, indeed, he made one of that character, that by any sound construction constituted the "excesses, cruel

treatment, or outrages" toward him as the statute prescribes; the appellant, upon her side, flatly contradicted him in practically the whole of his recital, particularly as. to each specific accusation he made against her.

While his own version thus lacked the support indicated, it conclusively appeared from the evidence as a whole, much of it from the appellee himself, that he had been the instigator of a number of the acts of misconduct toward their neighbors that he had attributed to the appellant, and that he himself, and not she, had been · his own worst enemy in bringing down upon their home the unhappy conditions of which he complained.

In a word, when the whole cause for the divorce is looked to, as seems to this court to be obvious from the quoted statement above given alone, the most that appears therefrom is such petty quarreling, misunderstandings, and "trivial matters or disagreements," as the Supreme Court says, in McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d, 459, 463, "do not constitute sufficient basis for the disruption of the marriage relation." 15 Tex. Jur. p. 547, § 84, p. 549, § 85, p. 453, § 16; Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821.

Indeed, this conclusion on the entire case as made by him would seem to become plain when the appellee's own statement of his major complaints against his wife are looked to, they being three in number, of this purport: That she was unable to get along with, or maintain amicable relations, either with her neighbors, or people generally with whom she came in contact; that she habitually criticized to himself and other friends the American people in general, and their ways of living as comparable with those of the Germans; finally, that she was continually fussing and bickering about their financial matters, under complaints that he did not furnish her sufficient money.

None of these accusations, even if taken as true, constituted grounds for divorce within the statute appellee invoked, but at most only the "trivial matters or disagreements," referred to supra, as seems plain from these holdings of our courts: Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821; Hansen v. Hansen, Tex.Civ.App., 76 S.W. 2d 552; Id., Tex.Civ.App., 96 S.W.2d 548; Yosko v. Yosko, Tex.Civ.App., 97 S.W.2d 1023; Parks v. Parks, Tex.Civ.App., 55 S.

W.2d 242; Mansur v. Mansur, Tex.Civ. App., 37 S.W.2d 846; Cole v. Cole, Tex. Civ.App., 299 S.W. 924.

While both the trial court and this court granted interlocutory orders for alimony to the appellant, pending respective dispositions of the cause in the two courts, this final judgment voids them perforce, as well as the adjudication made below as to the community property; there being consequently nothing else involved, the judgment granting the divorce will be reversed, and the cause will be rendered in appellant's favor.

Reversed and ·rendered,

PLEASANTS, C. J., absent.