## MORTENSEN v. MORTENSEN.

### No. 11475.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 14, 1945.

Rehearing Denied March 21, 1945.

298

J. F. Carl, of Edinburg, for appellant.

Chas. E. Thompson, of McAllen for appellee.

NORVELL, Justice.

This is a divorce case. Trial was to the court without the intervention of a jury. Judgment was for the wife, Gloria Elizabeth Mortensen, awarding her a divorce together with the custody of a minor child. A division of the community property was also effected by the judgment.

The husband, Jens Herman Mortensen, brings the case here. His primary contention is that the evidence is insufficient to support the decree and that it does not meet the statutory requirement of being full and satisfactory. He also contends that the trial court was without jurisdiction to try the case and that the part of the decree relating to a division of their community property is unauthorized by law.

■ As we understand the authorities peculiarly applicable to divorce cases, a decree dissolving a marriage must be supported by evidence which is not only "sufficient" but also "full and satisfactory." The terms "sufficient evidence" and "insufficient evidence" are generally used in discussing matters within the fact jurisdiction of a Court of Civil Appeals. Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982.

■ The rules used in determining the sufficiency of the evidence in the ordinary type of civil action are likewise applicable to divorce cases, for, obviously, "insufficient evidence" can not be "clear and satisfactory evidence." We first consider the question of the sufficiency of the evidence.

The testimony in this case is highly conflicting and consists of charges and counter charges made by each litigant against the other. While no findings of fact and conclusions of law were requested and filed in accordance with Rule 296, Texas Rules of Civil Procedure, certain findings were recited in the decree, among them being the following:

"The Court heard at length the facts presented by both parties and the argument of counsel for each party, and is accordingly of the opinion and finds as follows:

"1. That the law and the facts are with the plaintiff, and that she is entitled to the relief sought.

"2. That defendant's attacks upon the character and good name of plaintiff are unfounded and are inconsistent with his professed affection, respect and esteem for her.

"3. That defendant's cruelty to plaintiff has been such as to render their continued living together insupportable.

"4. That at the time of their separation there existed certain admitted community assets, and that since that time, and while the major part of such assets were in the possession and custody of defendant, he has wilfully dissipated a large portion of such community assets, the portion dissipated being considerably in excess of the amount of such community assets now admitted by defendant to be in existence. The court further finds that the remaining community property is in the possession of the defendant, and should be awarded to plaintiff."

■ In the recent case of Glenn v. Glenn, 183 S.W.2d 231, the Eastland Court of Civil Appeals, in discussing the contention that the evidence was insufficient, states the following rule as applicable to a divorce case in which the testimony was conflicting, viz.: "It is a well settled rule that it is for the jury or the court (as in this case) to decide issues of fact upon conflicting evidence or such evidence which is susceptible to diverse inferences. 41 T. J. 934, sec. 164; 3 T. J., p. 1088, sec. 764. The least that can be said of the evidence in this case is that it is conflicting, presenting questions of fact for the determination of the trial court, since the case was tried without a jury. 19 T. J., p. 682, sec. 254. Under such circumstances it is elementary that the trier of facts has the exclusive function of determining the credibility of the witnesses and the weight to be given to their testimony. 17 T.J., p. 889, sec. 403. Further, a reviewing court will not disturb the verdict of the jury or the findings of the trial court (when trial is without a jury) where there is some evidence to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him."

Tested by the rule above stated, we are of the opinion that the decree and the findings therein contained have support in the evidence. We shall briefly review the testimony relied upon to support the decree. As will be noted, this evidence in vital particulars consists of the testimony of appellee, the plaintiff below.

Appellant and appellee were married in Hidalgo County, Texas, on July 17, 1941.

At the time of the marriage Jens Mortensen was about twenty-three years of age and his wife was eighteen years old. A daughter, Barbara Ann, was born to this marriage in 1942. Some time after the marriage, the Mortensens moved from Hidalgo County to Port Arthur, Texas, where the husband was employed by a ship building firm.

According to Mrs. Mortensen's testimony, she left Port Arthur on November 18, 1943, and returned to her parents' home in McAllen, with the intention of not again living with her husband. The separation was preceded by numerous quarrels and disagreements. She filed suit for divorce in January, 1944, but this suit was abated upon the district judge's holding that the Mortensens had acquired a residence in Port Arthur and consequently Gloria Mortensen had not resided in Hidalgo County for six months next preceding the filing of the petition. On May 30, 1944, appellee filed the present suit which was heard by the court below on the 19th of July, 1944. It appears that Mrs. Mortensen has resided in Hidalgo County at the home of her parents continuously since November, 1943, and has been employed at Moore Field, an Army Air Force installation in Hidalgo County.

Appellee testified that she never at any time intended to return to her husband after she left him in November, 1943. She did, however, write certain letters to her husband which, while recognizing that they had had certain disagreements, might be construed as evidencing a willingness to resume marital relationships. She explains the writing of these letters by saying that she did not wish to have trouble with her husband at that particular time as her father was seriously ill of heart disease.

However that may be, appellant did come to Hidalgo County in December of 1943 and saw his wife upon certain occasions. Much of the controversy disclosed by the record revolves around these occasions.

Relating to the grounds for divorce alleged in the petition, Mrs. Mortensen testified that her husband was "overbearing" and "insanely jealous," that he had used "vile language" toward her and said "things I would not repeat in the courtroom," and "accused her of everything" in the way of bad conduct.

She further testified that:

"* * * at one time I failed to keep a laundry list, we were living over at Port Arthur and he lacked one or two shirts and he cursed and called me vile names and asked for the laundry list and I told him I had forgotten to keep a laundry list, and such things as that would happen, I just forgot to keep the laundry list and they lost one or two of his shirts. * * *

"On several occasions I have been turned over and spanked in the presence of his family, and I have had dresses torn off of me and thrown in the fire by him in front of his family. One time about two o'clock in the morning he took me out on a lonely road between San Juan and Pharr and slapped me good because I said I would not go back to Port Arthur, and when we went home he said he would not let me get out of the car because I said I was not going back to Port Arthur with him, and he tried to choke me and I screamed for my mother but she did not hear me."

While it seems, from Mrs. Mortensen's testimony, that some of the actions of her husband of which she complains occurred prior to the separation from her husband in November, 1943, the slapping incident occurred in December, 1943. The dress tearing incident likewise took place in December, 1943. Mrs. Mortensen testified that when she refused to return with her husband to Port Arthur, "he tore the dress off in the presence of his mother and threw it into the fire."

Another occurrence related by Mrs. Mortensen was as follows: "This was some time after he came home before Christmas. I was trying to keep things as quiet as possible until after Christmas and this particular afternoon my father was lying on the couch asleep and Jens said, he got mad and fussed around there and he went back in the back closet and took the rifle and put it in the car and he said he was going to kill me or anybody I went with and he asked where the bullets were and I told him I wouldn't tell him if I knew, and he went through my mother's dresser but he didn't find any or he lost his nerve or something because he brought it back. I threatened to tell my father and I guess that scared him."

Appellee testified that she was afraid of her husband from a physical standpoint; that she had fear of physical violence from past experiences—"the time he tried to choke me in the car, he threatened to kill me and said I would never be free of him, never."

Despite the charges of indiscreet conduct leveled against her upon the trial of this case, Mrs. Mortensen testified that she had not been guilty of misconduct as charged and had not provoked the verbal abuse or physical assaults to which she had been subjected by her husband.

As to the question of jurisdiction, we hold that the trial court's finding that it had jurisdiction of the parties and the subject matter has support in the evidence. Mrs. Mortensen was physically present and residing in Hidalgo County for six months next preceding the filing of her petition and had lived in Texas all her life. According to her testimony, she left her husband by reason of his ill treatment of her. If on the basis of her letters, and contrary to her direct testimony upon the trial of the case, it be considered that she did for a time consider returning to her husband, it is difficult to see how this could affect the trial court's jurisdiction, especially since the tentative idea was never made effective as an intention and carried out.

We also hold that the evidence is sufficient to support a finding that Jens H. Mortensen was guilty of cruel treatment toward his wife as defined in Article 4629, Sec. 1, Vernon's Ann.Civ.Stats.

The fact that certain of the actions complained of by appellee occurred after the separation from her husband does not make them unavailable to her as grounds for divorce. Steele v. Steele, Tex.Civ.App., 257 S.W. 300.

Under the early common law it was held that the husband might give his wife moderate correction by the use of physical force, "for if he was to answer for her misbehavior, he ought to have the power to control her." This barbarous doctrine of wife whipping "began to be doubted" during the reign of Charles the Second (1 Bla.Com. 444), and is not now recognized by any English or American jurisdiction. The rule at the present time is that "the law does not recognize a right in the husband to use physical force to control the acts and will of his wife or to compel her to obey his wishes." 41 C.J.S., Husband and Wife, § 13, p. 403. This rule has always been the law of Texas. 23 Tex. Jur. 18, § 7. Our courts have never regarded the husband's use of physical force against the wife as a light or trivial thing. It has been held that "a single act of personal violence by the husband to the wife

as a blow of the fist or hand may be sufficient cause for divorce." Powell v. Powell, Tex.Civ.App., 170 S.W. 111, 113; Miller v. Miller, 72 Tex. 250, 12 S.W. 167; Huilker v. Huilker, 64 Tex. 1, 3. There are numerous authorities holding that repeated acts of physical violence toward the wife, accompanied by threats and abusive language, which raise a reasonable fear of bodily safety in the wife, constitute grounds for divorce under the "cruel treatment" section of our divorce statutes. Article 4629, § 1; Bell v. Bell, Tex.Civ.App., 135 S.W.2d 546; McCracken v. McCracken, Tex.Civ.App., 11 S.W.2d 397; 15 Tex.Jur. 459, § 21; Speer's Law of Marital Rights in Texas, p. 733, § 600.

In effecting a division of the community property, the trial court awarded to appellee, a Pontiac automobile, certain silverware and crystal, as well as $150 in cash, all of which were in the possession of appellee at the time of the trial. This order was entered upon the finding that appellant had wilfully dissipated more than one-half of the community property owned by appellant and appellee.

Appellant admitted that in November, 1943, he had in his possession government bonds of a maturity value of $1,800. The bonds apparently were War Savings Bonds, Series E, and had been purchased from his earnings as an employee of the ship building firm at Port Arthur. These earnings amounted to $400 per month. Appellant testified that he cashed approximately $200 worth of these bonds and spent the money on his trip to Hidalgo County in December, 1943.

At the time of the trial, appellant testified that all of the bonds which he had in November, 1943, had been disposed of. "I spent it in expenses, travelling, staying around at hotels and eating at restaurants, it would be a dollar fifty cents or a dollar each time I would eat." Appellant also testified that he had not worked steady because of ill health, but had travelled extensively, going to San Antonio and different places, in the course of an investigation relating to his wife's conduct.

In our opinion the trial court's finding that appellant had dissipated a substantial portion of the community property has support in the evidence. In view of this finding, it can not be said that the division of the community property effected by the decree was unauthorized in law. "A

wide discretion, within reasonable limits and in the interest of right and justice, is vested by statute in the trial court as respects the partition of the property between the parties divorced." 15 Tex.Jur. 582; Article 4638, Vernon's Ann.Civ.Stats.; Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21; Barry v. Barry, Tex.Civ.App., 162 S.W.2d 440.

So far we have considered the case solely from the standpoint of the sufficiency of the evidence. That part of the decree or judgment which effects a dissolution of the marriage relationship between the parties must be supported by "full and satisfactory evidence." Article 4632, Vernon's Ann.Civ. Stats. The authorities apparently recognize some difference in the quality of evidence which may be described as "sufficient" and that which meets the test of being "full and satisfactory." The requirement that the evidence supporting a divorce decree be full and satisfactory has been a part of the divorce laws of Texas from earliest times. In Moore v. Moore, 1858, 22 Tex. 237, Chief Justice Wheeler, in discussing the practice and rules peculiarly applicable to divorce suits, said: "The law has wisely enjoined upon the courts, the duty of watching over these proceedings with the strictest scrutiny, and interposing to prevent abuses of the delicate and responsible power confided to them, to dissolve the marriage contract. What shall be deemed sufficient cause of divorce, must ever be matter of law; and the law has made it the duty of the judge to refuse a decree, unless satisfied of the truth and sufficiency of the evidence, by which those causes are established. Our statute is explicit upon this subject; declaring that 'the decree of the court, shall be rendered upon full and satisfactory evidence, independent of the confession or admission of either party, and upon the verdict of a jury, affirming the material facts alleged in the petition.' (Hart.Dig. Art. 849.) There must be the 'full and satisfactory evidence,' and 'the verdict of a jury;' both must concur, before the court can lawfully proceed to decree a divorce. It is to the mind of the court, of course, that the statute intends that the evidence shall be 'full and satisfactory.' Unless it be so, it is the duty of the court to set aside the verdict, and refuse a decree. In decreeing a divorce, the judge does not proceed, as in other cases, upon the verdict of the jury, but upon his own judgment, after the jury, by their verdict, have affirmed the truth of the material allegations of the petition. The mind of the judge must be satisfied, not only of the sufficiency of the causes alleged, but of the truth and sufficiency of the evidence, by which they are established, independently of the verdict."

The present day rule is substantially similar to that stated by Judge Wheeler. In Speer's Law of Marital Rights in Texas, it is said: "A peculiarity of trials of this character is that the proof must be full and satisfactory to the court, even after the jury may have found the material allegations of the petition true. For the court is not bound to make the decree upon such finding, but, should it be of opinion the proof is not of that character, may nevertheless refuse to grant the decree. It is not meant merely that the court must be satisfied of the sufficiency of the facts alleged, but of the evidence supporting them as well, independently of the verdict of the jury finding them true. While the evidence ought to fully and conclusively establish the truth of the material allegations of the petition to the satisfaction of the court, yet the action of the trial court is subject to review by the appellate court, and in a proper case the decree may there be rendered, or the party dissatisfied should move in the trial court for a new trial and tender the additional testimony." Speer's Marital Rights in Texas, p. 764, § 618.

There are authorities holding that the question of whether or not the evidence is full and satisfactory is one for the appellate court as well as the trial court. 19 Tex.Jur. 549. This is undoubtedly true, but an investigation of the cases in which the appellate courts have reversed decrees of divorce rendered by trial courts will disclose that in most instances the evidence relied upon to support the decree consisted mainly of generalities, fact conclusions, and recitations of circumstances and emotional reactions from which it could not be determined with certainty whether the actual situation of the parties was one involving mere family quarrels and squabbles, or was one in which "cruel treatment" in the statutory sense had been practiced by one spouse upon the other. The appellate courts can not and do not determine the credibility of witnesses and the weight to be given their testimony. In this particular the position and authority of the appellate court differs from that of

the trial court. This is made clear by the history of the development of the rules of evidence applicable to divorce cases.

Under the common-law rules of evidence, interested parties could not testify. The theory supporting this rule of exclusion was that parties were under strong temptation to commit perjury. Their testimony for that reason was regarded with suspicion and was rejected on the grounds of public policy.

This rule of exclusion was later modified by statute, article 3714, Vernon's Ann.Civ. Stats., with certain exceptions; one exception being that the husband and wife were still regarded as incompetent witnesses against each other in a divorce case. In Stafford v. Stafford, 1874, 41 Tex. 111, the Texas Supreme Court said: "The law changing the common-law rule of evidence in permitting parties in interest to testify in a suit *does not and was not intended* to still further alter the common law, and permit the husband or wife to testify against each other in the matters of divorce. With the question of community property it may be otherwise. The marriage contract or relation, while classed in its legal acceptation as a civil contract between the parties to it, 'yet it is said to be more than a contract, and to differ from all other contracts,' and has interests and legal consequences connected with and resulting from it that make it the most important to society of all human transactions. Its importance is fully appreciated by all civilized nations. It is perhaps the only civil contract, however, which the parties to it cannot at pleasure annul, and cannot in any instance annul save through the medium of the courts, and upon full and satisfactory proof, independent of the confessions or admissions of either party. The statute regulating divorce has remained during the thirty-three years from its enactment to the present time without any alteration or amendment. It has been during that time administered according to its terms without complaint as to any of its provisions, and no desire has existed or effort been made to alter it in any material features. Can it be supposed, under all the circumstances connected with or consequences flowing from a permission to the parties in interest to testify in divorce suits, that the Legislature, in the act of May, 1871, intended to repeal the prohibitions of the law of 1841, (art. 3452)? To do so would be to admit that the Legislature intended to remove all legal restraint against divorce, and enable the parties seeking or desiring a divorce to do indirectly what the law was designed to prevent." See also: Cornish v. Cornish, 56 Tex. 564.

However, in 1897, the Legislature adopted an Act which expressly permitted such testimony. Acts 1897, 25th Leg.Reg. Session, p. 49, ch. 49. This law has remained on the statute books of this State for almost fifty years, and now appears as Article 4633, Vernon's Ann.Civ.Stats., which reads as follows: "In all such suits and proceedings the husband and wife shall be competent witnesses for and against each other, but neither party shall be compelled to testify as to any matter that will criminate himself or herself; and where the husband or wife testifies, the court or jury trying the case shall determine the credibility of such witness and the weight to be given such testimony; but no divorce shall be granted upon the evidence of either husband or wife, if there be any collusion between them."

While it is apparent that under certain circumstances one member of a marital union might be subjected to most outrageous indignities at the hands of the other, which could be disclosed only through the testimony of the victim, it has also been emphatically stated that from the standpoint of society as a whole, there are strong objections to the practice of receiving the testimony of parties in divorce cases. Stafford v. Stafford, 41 Tex. 111; Lohmuller v. Lohmuller, Tex.Civ.App., 135 S.W. 751; Blake v. Blake, Tex.Civ.App., 263 S.W. 1075.

The choice of policy as between one theory which seeks to obtain justice for the individual by admitting testimony, and the other theory which seeks to protect society as a whole by excluding testimony, is clearly one for the legislative branch of our government. It becomes the duty of the judiciary to follow and enforce the public policy of the State as declared by constitutional statutes duly adopted by the Legislature.

Article 4633 expressly provides that "where the husband or wife testifies, the court or jury trying the case shall determine the credibility of such witness and the weight to be given such testimony." This rule is likewise applicable to any other witness in the case.

In Mayen v. Mayen, 177 S.W.2d 240, 243, the El Paso Court of Civil Appeals direct-

ly held: "In the discharge of this duty (of determining whether or not the evidence is full and satisfactory) *we may not determine the credibility of witnesses."* (Italics ours.)

In Bell v. Bell, Tex.Civ.App., 135 S.W.2d 546, 547, the Eastland Court of Civil Appeals, in discussing an issue supported by the testimony of appellant, but challenged in appellee's brief as being untrue, said: "If this is a correct interpretation of the record the evidence certainly raised an issue of fact which the trial court has disposed of. That court had the power and duty to pass upon the credibility of witnesses and the weight to be given to testimony."

In Hickman v. Hickman, Tex.Civ.App., 20 S.W.2d 1073, 1074, the Waco Court of Civil Appeals said: "However, we think, as the trial court observes the manner and general deportment of witnesses during the trial, and hence is better able to weigh the evidence, the appellate court should give much deference to the judgment of the trial court in passing on the credibility of witnesses, even in a divorce suit. *The weight of the evidence is for the trial court."* (Italics ours.)

In Wright **v.** Wright, 50 Tex.Civ.App. 459, 110 S.W. 158, 160, the Austin Court of Civil Appeals said: "Under these circumstances, while it is true there was a conflict in the evidence, the jury has found in favor of the mother, and the learned judge who presided at the trial, and who was in better position to pass upon this question than this court can be, * * * we do not feel justified in distributing same, and therefore overrule this assignment."

█ From the authorities above cited, we take it that the rule is that this court may examine the statement of facts to determine whether or not the evidence is full and satisfactory. In so doing, we are not necessarily bound by the trial court's findings although they are entitled to great deference by this court. When, however, is making this examination, we are confronted by testimony of one witness which is directly contradicted by that of another witness, we must accept the trial court's decision upon the point, as we possess no authority to pass upon the credibility of witnesses and the weight to be given their testimony. As to these matters, the untrammelled decision of a conscientious trial judge is more to be desired than his estimate or guess as to how the cold written record of a trial may impress an appellate court.

█ Appellant here has briefed his case from the standpoint of a different theory of law than the one outlined above. We are here asked to give credence to his testimony and to that of his witnesses, although such evidence was contradicted by appellee. Appellant denies that he ever used physical violence against his wife, and with the support of some authority asserts that appellee's testimony is uncorroborated. The wife's testimony was pronounced clear and satisfactory by the trial court, so those cases which hold that a trial court is justified in refusing a divorce because the testimony of either the husband or the wife was not corroborated are not in point here. Testimony if corroborated may often convince a trial court of its truth, while without corroboration such testimony may not carry conviction. This does not mean that uncorroborated testimony is insufficient as a matter of law to meet the "clear and satisfactory test" either in the trial forum or in this court. If evidence is pronounced clear and satisfactory by the trial court, and no more than an issue of credibility is involved, such evidence must be accepted as clear and satisfactory by this court under the authorities above cited.

The case of Lohmuller v. Lohmuller, 135 S.W. 751, opinion by the late honored Chief Justice Fly of this court, is relied upon as supporting a rule that the uncorroborated testimony of one of the parties will not support a decree of divorce. However, in the later case of McBee v. McBee, Tex.Civ. App., 247 S.W. 588, Chief Judge Fly recognized that "the statute (now Article 4633) does not require that the testimony of either spouse be corroborated in a divorce suit." In Blake v. Blake, Tex.Civ.App., 263 S.W. 1075, 1076, Chief Judge Fly strongly criticized the policy of the statute in permitting parties to testify in divorce cases and put forth the contention that the statute should at least require "material corroboration when one party to the marital pact testified against the other." However, despite the considerations mentioned by Judge Fly in his opinions, as well as those put forth by other experienced jurists, the Legislature has not seen fit to amend the statute, and consequently we are bound to follow it.

■ There is no question but that the overwhelming weight of authority supports the following holding of the El Paso Court of Civil Appeals in Mayen v. Mayen, 177 S.W.2d 240, viz: "In our opinion, the evidence may be full and satisfactory within the meaning of Art. 4632, even though the evidence be only the uncorroborated testimony of one of the spouses contradicted by the other. Wynn v. Wynn, Tex.Civ.App., 251 S.W. 349; Tinnon v. Tinnon, Tex.Civ. App., 278 S.W. 288; Cooksey v. Cooksey, Tex.Civ.App., 40 S.W.2d 947; Lowery v. Lowery, Tex.Civ.App., 136 S.W.2d 269; Day v. Day, Tex.Civ.App., 142 S.W.2d 394." See also: Speer's Law of Marital Rights in Texas, p. 763, Sec. 618.

Under the authorities and the trial court's findings, we must hold that it appears by clear and satisfactory evidence that appellant employed physical violence against his wife, coupled with threats and abuse, so as to raise a reasonable fear of bodily safety and render their living together insupportable.

Appellant's brief contains no points which assert that a divorce should have been denied under the doctrine of recrimination or any theory similar thereto. We take it, however, from the arguments contained in appellant's brief that he is here attempting to urge some defense in the nature of recrimination or by way of an excuse of his actions toward his wife.

We need not go into this testimony in any great detail for a number of reasons, primarily because it was not believed by the trial court.

As above disclosed, there is evidence that certain acts of physical violence and threats took place after appellee had left her husband and returned to her parents' home in Hidalgo County. All of the letters written by appellee to her husband were written prior to the time when, according to appellee's testimony, her husband slapped her, tried to choke her, and threatened her life while he was in Hidalgo County, in December, 1943. These letters seem to be relied upon by appellant primarily in connection with his contention that the trial court was without jurisdiction. Upon the point here involved, the only effect that could be given to them, taken in connection with her testimony upon the trial, would be to show that appellee had not told the truth to her husband. If it be concluded that appellee did lie to her husband, this would neither justify nor excuse the

husband's use of force upon his wife's person. Nor did her refusal to return with him to Port Arthur justify or excuse the use of physical force in order to obtain the wife's compliance with the husband's desires in regard to the matter. To so hold, would be to run counter to the authorities which hold that a husband has no right to employ physical force against his wife to compel her to obey his wishes.

Appellant, as we understand it, does not take the position here that he was justified in using physical force. He contends that he made no assaults upon his wife. This raises a pure question of credibility which we have heretofore discussed.

Appellant seemingly, in an effort to establish recrimination, brought forward certain testimony which had particular reference to his wife's actions after she had left Port Arthur and come to Hidalgo County, Texas.

■ There was testimony in the record that appellant was given to abuse of his wife and violence toward her before she left Port Arthur and separated from him. The trial court could conclude on the basis of this testimony that appellee's action in leaving her husband was justified. Certain of the actions of appellant complained of by appellee took place after their separation. With regard to a similar situation, the Beaumont Court of Civil Appeals, in McCracken v. McCracken, 11 S.W.2d 397, 398, said: "Appellant's suit for divorce is based upon cruel treatment after separation, but while they were still husband and wife. Whether appellant conducted herself with propriety and had performed her marital duties with fidelity, as she should while living with appellee as his wife, was wholly immaterial to her right to a divorce on the ground and for acts of cruelty to her by appellee committed after separation. Allen v. Allen, Tex.Civ.App., 128 S.W. 697; Steele v. Steele, Tex.Civ.App., 257 S.W. 300. The assaults and batteries committed by appellee upon appellant were unlawful, unprovoked, and inexcusable, and such as to put appellant in fear of her life, as she testified she was."

■ The most compelling reason why appellant's theory of recrimination will not stand is that the testimony relied upon to support the defense simply was not credited by the trial court. Appellant's position in the trial court was that he still loved his wife, but that she had become infatu-

ated with a Lieutenant in the Army Air Forces and made a practice of running around with Army personnel from Moore Field.

Appellee denied the charge of infatuation and denied any charge or inference of wrong doing in connection with her association with the personnel of the Army Air Field where she was employed. The trial judge evidently believed appellee and did not believe appellant and his witnesses, and with that appellant's defense of recrimination failed. It is not deemed necessary to detail appellant's testimony, since the trial judge did not believe it or did not choose to draw the inferences therefrom which would be necessary to establish appellant's defense.

The trial court's solemn finding written into the judgment is conclusive upon the phase of the case, viz: "The Court finds * * * that defendant's attacks upon the character and good name of plaintiff are unfounded and are inconsistent with his professed affection, respect and esteem for her."

The judgment of the trial court is affirmed.