## PYBUS v. PYBUS.

### No. 5247.

Court of Civil Appeals of Texas. Amarillo.

Jan. 13, 1941.

Rehearing Denied Feb. 10, 1941.

J. Shirley Cook, of Vernon, for appellant.

Berry, Warlick & Bunnenberg, of Vernon, for appellee.

JACKSON, Chief Justice.

Mrs. Ruby Louise Pybus, the appellee, instituted this suit in the District Court of Wilbarger County against the appellant, William Wiley Pybus, to obtain a judgment for divorce, for a partition of their community property and to require him to account to her for one-half the rents and revenues derived therefrom.

The appellee predicated her grounds for divorce on an allegation of cruelty to the effect that shortly after they were married he began a course of unkind, harsh and tyrannical conduct toward her which continued until she finally separated from him on or about the 6th day of December, 1939.

The appellant answered by general demurrer and denied generally and specially that he had ever treated the appellee in an unkind, harsh or cruel manner or that he had ever questioned her fidelity or manifested a jealous disposition toward her.

The case was tried before the court without the intervention of a jury and judgment rendered granting a divorce and a partition of the property described and a finding that since the property was not susceptible of partition that it be sold and the proceeds be divided, from which judgment this appeal is prosecuted.

The appellant challenges as error the action of the court in rendering judgment dissolving the bonds of matrimony between him and the appellee for he contends the testimony is wholly insufficient to support such judgment.

The record shows the plaintiff had been married to a former husband from whom she had been divorced prior to her marriage with the defendant and that she and her first husband had three children whose

ages at the time of this trial were eighteen, sixteen and thirteen, respectively. After her separation from the first husband she was employed by the defendant to work in his cafe at $7 per week. Thereafter, the time not being shown, she became an equal partner in the cafe business which she and the defendant operated in the city of Vernon, Texas.

The defendant was divorced from his former wife in 1937 and he and the plaintiff were married to each other on May 26, 1938.

She testified that she had known the defendant six or seven years before their marriage and that they had been partners in the cafe for more than five years previous to their wedding. She worked at the cafe all the time after she was first employed by the defendant until she left him on December 6, 1939. In connection with the cafe they sold beer and the license authorizing the sale of the beer at the cafe was obtained in the name of plaintiff because the defendant's license had been cancelled.

In contemplation of their marriage they purchased a place and furnished it for their home each advancing one-half of the payments made, presumably out of their partnership funds, however, this property was purchased partly for cash and partly on time and the unpaid balance was to be discharged in installments. After they married they secured possession of the property purchased for a home and occupied it for a while but she testified the defendant decided it would be to their advantage to move to a two-room apartment they had connected with the cafe and rent out the home since they would be nearer the business and their work, would not have to get up so early and could apply the monthly rent collected for the place on the deferred payments against the home and furniture which he anticipated they might not be able to meet otherwise. She says she would have preferred living at the home place but as they wanted to pay their debts and get the property in the clear she thought it best to move to the apartment, which they did, where they lived with some of her children and one of his boys who was there a part of the time. They both worked in the cafe, both had access to the cash register and both superintended the business. Some time previous to the date of their separation she had a nervous breakdown, consulted a doctor who advised her she had overworked, overtaxed her strength, must rest and refrain from the use of all intoxicating liquors. They attended dances and other places together before they were married and he usually got mad if she danced with another man more than once because he was jealous, though without any cause. She thought if she married him they would get along better but they did not. The acts of cruelty which she testified to against him as grounds for divorce were that he would disagree with her whether she was right or wrong; he would get mad if she danced with another man as much as twice, fuss, jerk her around and want to go home; that on the occasion when she left him they attended a party, he got mad, began drinking, quarreled about her dancing with another man, wanted to go home and divide up their furniture and property saying he would not put up with her conduct any longer. She was not ready to go home and told him she would come later with friends and he said if any one brought her home it would be too bad for them and her; that he went home, packed her clothes, got his gun and reported to the officers that she had run off with another man; that this was not true, embarrassed and humiliated her and that she went home with a friend that night. However she testified his conduct and accusations did not impair her relation with her friends or her enjoyment of their society but she got angry about the way he acted and left but he didn't know that she was leaving; that he had never accused her of infidelity except about her running off with this man this one night; that he never abused her or called her bad names. She says she drank a bottle of beer occasionally but admits that the doctor advised her that she must take a rest and refrain from drinking intoxicating liquor. After she left him he returned, apologized to her, said he had made a mistake, would take all the blame and had tried practically every day since to get her to make up with him and start over; that soon after she left him she went to East Texas and stayed a while and he came after her and brought her back; that he sent her groceries after she came back, paid the bills, hired some one to do her work and that she had been down to the cafe three or four times every week since she returned, had access to the cash register but exercised this privilege only two or three times for small amounts of money. She says she was frightened

when he got his gun the night she left him and that she did not believe she could live happily with him "because he never has been able to provide a place for me to live and me to stay at it, because he never could pay the bills; I always had to help work and pay the bills, and so he never has had a place for me to stay, and therefore, he is not in as good a shape as when I quit him, and he couldn't make it now because he hasn't got as good a business now as when I left him, and I don't think I could live up there without having to work myself." She also says that she has never recovered from her nervousness and is afraid that she would not get well and therefore could not be happy as his wife. The treatment of which she complains apparently occurred at parties or other public gatherings but no one present was put on the stand to corroborate her evidence.

The defendant testified that he and the plaintiff had been partners since 1933 or 1934; that he did not know she was leaving when she quit him or why she left as she had made no complaint to him of his conduct and he didn't even know she was offended at what occurred at the party; that he was not jealous, was not offended by her dancing with other men; that she had been nervous for some time before she quit him and the doctor advised her not to drink beer or intoxicating liquor and really the only differences they ever had were trivial and arose almost in every instance out of his efforts to persuade her to discontinue drinking; that he had been to see her every night since he had brought her from East Texas and had done everything he knew to persuade her to return and continue to live with him as his wife; that she drank too much at times, gave the time, place and the parties with whom she was on the occasions of her excessive drinking, none of whom denied his evidence. Three witnesses who had been employed and worked at the cafe at different times in the capacity of cook or waitress testified that the plaintiff had been at the cafe, participated in the management thereof; had access to the cash register and that they had never seen the defendant mistreat or heard him quarrel or abuse the plaintiff in any way but he had always been kind and considerate and that they had seen the plaintiff drink on occasions. The plaintiff could not have really feared the defendant nor have been made nervous by his presence.

The courts in granting a divorce on "excesses, cruel treatment or outrages" or such conduct as renders the living together of the spouses insupportable must consider the conduct relied on to show cruelty in the light of all the facts and circumstances surrounding the parties, including the character, refinement and sensibility of the parties. The marriage contract is an obligation more sacred than a purely commercial transaction and the bonds of matrimony should not be dissolved for trivial matters or insignificant disagreements between the husband and wife.

Article 4632 of Vernon's Annotated Civil Statutes provides that a decree for a divorce "shall be rendered upon full and satisfactory evidence" which in the judgment of the court supports the material facts alleged in the petition. This language has been construed by the Supreme Court in Moore v. Moore, 22 Tex. 237; Murray v. Murray, 66 Tex. 207, 18 S.W. 506.

In Yosko v. Yosko, Tex.Civ.App., 97 S. W.2d 1023, 1025, it is said:

"More strict rules and stronger evidence is, and should be, required to dissolve the marital union and contract than would be sufficient to justify the setting aside of an ordinary contract. Article 4632, R.S. 1925; Parks v. Parks (Tex.Civ.App.) 55 S.W.(2d) 242; Aylesworth v. Aylesworth (Tex.Civ.App.) 292 S.W. 963; Blake v. Blake (Tex.Civ.App.) 263 S.W. 1075, and authorities in each cited.

"In such cases the findings of a jury, if a jury is used, or the findings of the trial court, on the facts, are not binding upon the appellate court, as in ordinary proceedings. Aylesworth v. Aylesworth, supra; Jasper v. Jasper (Tex.Civ.App.) 2 S.W. (2d) 468."

See also Harrell v. Harrell, Tex.Civ.App., 261 S.W. 205; Erwin et al. v. Erwin, Tex. Civ.App., 231 S.W. 834; Lohmuller v. Lohmuller, Tex.Civ.App., 135 S.W. 751.

As we view this record the testimony does not satisfactorily establish excesses, cruel treatment or outrages of such a nature as to render the living together of plaintiff and defendant insupportable. The judgment depends almost entirely on plaintiff's testimony, all of which is controverted.

The judgment is reversed and the cause remanded.