**MAYEN v. MAYEN.**

No. 4350.

Court of Civil Appeals of Texas. El Paso.

Nov. 18, 1943.

Rehearing Denied Dec. 2, 1943.

Elmer Ware Stahl and A. R. Sohn, both of San Antonio, for appellant.

Carlos C. Cadena and Van Henry Archer, both of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal by Mrs. Herminia Mayen from part of the judgment of one of the district courts exercising jurisdiction in Bexar County. Tom Mayen sued his wife, Herminia, for a divorce on the ground of cruel treatment and alleged an executed contract of settlement of her community rights. She answered denying the allegations of cruelty, denying the contract of settlement as to the community property, and seeking, in the event a divorce was granted her husband a division of the community property. She also asserted a certain automobile was her separate property and, among other things, a sewing machine of the value of $150 was community property. She charged certain sums of money which were community property were expended in the improvement of her husband's separate property, and sought reimbursement therefor; further, the fraudulent conveyance or incumbrance of cattle which were alleged to be community property.

The trial was to the court without a jury. Judgment was rendered granting appellee the divorce sought, upholding the settlement plead by appellee, and awarding appellant the automobile and sewing machine. The appeal was perfected from the entire judgment except that portion awarding to defendant (appellant here) the automobile and sewing machine.

The points of error urged in general attack the sufficiency of the evidence to support the judgment entered awarding the divorce and upholding the settlement.

As grounds of cruelty appellee's petition alleged: " * * * but the defendant, unmindful of the duties and obligations of her marital vows, began a course of conduct a few months prior to their separation as aforesaid whereby she would neglect this plaintiff and would curse and abuse this plaintiff, and on the day in particular, to-wit, the day of their separation she cursed and abused this plaintiff and slapped him and informed him that she no longer

desired to live with him as man and wife."

Appellant and appellee were married on August 3, 1940 in the City of Monterrey, Mexico. On September 3, 1940 appellee secured authorization from the immigration authorities of the United States for appellant, a citizen of Mexico, to enter and remain in the United States. On that date she came to San Antonio and appellee and appellant took up their residence on a farm of 156 acres some seven or eight miles from the City of San Antonio. The title to this farm stands in the name of appellee's mother, but he perhaps owns the beneficial title thereto. They lived on the farm together until November 22, 1942, at which time appellant returned to Monterey, Mexico, and they have not lived together since that date. On the 3d day of March, 1943, appellee instituted this suit, citing appellant by publication on the ground that she was a nonresident. She heard through friends of the pendency of the suit and filed answer thereto.

During the time they lived together appellant attended to her household duties and helped to raise and sell poultry. Appellee had a pool hall in the city and attended to that. Among other of his business activities he was a gambler. On the date of the marriage appellee was about 46 or 47 years of age and appellant was about 33.

The case, in so far as the divorce was concerned, turns on the sufficiency of the evidence. There are no trial errors urged. As to the grounds of the divorce the testimony of each conflicts, and as to material matters neither is corroborated. This is true likewise as to the alleged settlement of community property.

We here reproduce appellee's reply to a question as to why he and his wife separated:

"A. The cause of the separation is because she always contradicted me. At times I would go out and do some dealing or some kind of business or gambling, because that is part of my business, and she would contradict me. All she wanted was money. I was very liberal with her and let her do anything she wanted to. Time went on and finally one night we got together and she was in a bad mood. She was always contradicting me. Then on a certain occasion which was on the 20th of November, we came to town to get a ration ticket for gasoline for a car I had bought

and at that time she got to contradicting me and didn't even want to sign it. Finally that evening she told me to take her to my brother's, which I did. She then told me to come after her about eight o'clock, which I did. So we went home that night and she was angry with me again and she said, 'Well, I am ready to quit you, you God damn son of a bitch,' and she slapped me. When she did, I said, 'All right; I am through,' and she said she was going to go out and buy what she wanted, a trunk and things, and 'I am going.' I said, 'All right; that suits me. We might as well separate,' and she said, 'I want part of that money we have,' and I said, 'Yes; I will give it to you.' I had about nine hundred sixty some dollars in a checking account in the bank,—."

Appellant denied striking appellee and using the epithet testified to by appellee. Each party admits a disagreement and quarrel occurring in the office of Mr. Bernard. The purpose of this visit was for appellant to sign an application for gasoline for an automobile. Appellant at least at first refused to sign the application. She explains this by stating she could not read English and she would not sign the application until she was apprised of its contents. Whether she did or did not sign same, does not appear. She said during this argument appellee struck her on the shoulder. Appellee denies this.

It is fair to conclude from the evidence this disagreement was attended by some loud talking. Mr. Bernard testified briefly as to this controversy. He says the parties were talking loud; that he closed the office door; did not see appellee strike appellant, and had he done so, thought he would.

From Mr. Bernard's office the appellee drove appellant to the Immigration Office to see about getting permission for her to go to Mexico, at whose suggestion does not appear. At least this was appellant's testimony, and appellee did not contradict same. Appellant testified that appellee forced her to leave. From the Immigration Office appellee drove appellant to the home of his brother and called for her about 8 o'clock in the evening, driving her home. The transactions above narrated all took place on the 20th of November, 1942. On the 21st appellant made some preparations for her trip to Monterey.

Appellee testified on the 21st in the evening he came to the house and delivered

to her $700 he had that day withdrawn from the bank and some forty odd dollars he had that day taken from a safety deposit box to which each had access. He likewise testified he offered her a twenty-five dollar Savings Bond, which she threw at him, stating: "Now, I am through with you and I don't want a God damn thing to do with you and you can keep the bond." This entire transaction on the 21st appellant denies in toto.

On the evening of November 22, 1942, appellant took the train for Monterrey. At the train were appellee, his brother and his brother's wife. The brother testified appellant told him at the train she never intended to return; further, that she left some boxes at his home, including a small home savings bank. Appellant purchased a round-trip ticket to Monterey.

■ Appellee testified to prior disagreements with his wife. He said she was happy when he gambled and won, angry when he lost; that she sought frequently to get him to move to Monterey; as he expressed it, "contradicted him."

These matters we regard as trivial and presenting no ground for divorce. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459.

Appellee, according to his testimony, expected his wife to seek a divorce in Mexico, and when she did not do so, went there to see about the matter. She declined to institute the action and he instituted this suit. From his testimony it does not appear that she had any probable grounds to secure a divorce from him. Appellant contends that as a matter of law, conceding the testimony of appellee to be true, no grounds which could support a divorce are shown.

■ We cannot agree to this. According to appellee's testimony appellant slapped him, at the same time applying to him one of the vilest epithets known to the English language. True, it does not appear that the assault and battery harmed him physically. The true test is, whether the treatment rendered further living together insupportable. McCullough v. McCullough, supra.

Her further position is that the testimony is not full and satisfactory within the meaning of Art. 4632, R.S.1925. That article in substance provides as to a divorce case the decree of the court shall be rendered upon full and satisfactory evidence upon the judgment of the court affirming the material facts alleged in the petition. Art. 4633 provides, in substance, that the husband and wife may testify, and that where either testified, the court or jury trying the case shall determine the credibility of such witness.

■ It cannot be said that there is no evidence supporting the decree. Appellee's own testimony supports same. The question then is, Is it supported by full and satisfactory evidence? The trial court answered the question in the affirmative. This is not enough. It is our duty to determine as to the quality of the evidence in this respect. Moore v. Moore, 22 Tex. 237; Erwin v. Erwin, Tex.Civ.App., 40 S.W. 53; De Fierros v. Fierros, Tex.Civ.App., 154 S.W. 1067; Smith v. Smith, Tex.Civ. App., 218 S.W. 602; Blake v. Blake, Tex. Civ.App., 263 S.W. 1075; Parks v. Parks, Tex.Civ.App., 55 S.W.2d 242; Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821; Pybus v. Pybus, Tex.Civ.App., 147 S.W.2d 512; Callender v. Callender, Tex.Civ.App., 167 S.W.2d 800.

There are cases holding, or the opinions at least declare, that the testimony is not full and satisfactory in a divorce case when supported only by the uncorroborated testimony of the husband or wife. Lohmuller v. Lohmuller, Tex.Civ.App., 135 S.W. 751; Parks v. Parks, Tex.Civ. App., 55 S.W.2d 242, 243. In our opinion this is not the correct rule. See McBee v. McBee, Tex.Civ.App., 247 S.W. 588; Wynn v. Wynn, Tex.Civ.App., 251 S.W. 349; Tinnon v. Tinnon, Tex.Civ.App., 278 S.W. 288; Cooksey v. Cooksey, Tex. Civ.App., 40 S.W.2d 947; Lowery v. Lowery, Tex.Civ.App., 136 S.W.2d 269; Day v. Day, Tex.Civ.App., 142 S.W.2d 394.

In the case here we have practically the uncorroborated testimony of appellee, contradicted by the uncorroborated testimony of appellant. In this situation it has been said that, as a matter of law, the evidence is not full and satisfactory. Lawson v. Lawson, Tex.Civ.App., 293 S.W. 336; Parker v. Parker, Tex.Civ.App., 165 S.W. 2d 926; Callender v. Callender, Tex.Civ. App., 167 S.W.2d 800.

In our opinion, in none of the above-cited cases were the expressions strictly necessary to the disposition of the case. In the case of Lawson v. Lawson what was said was evidently based upon the as-

sumption that the correct rule was that a divorce should not be granted upon the uncorroborated testimony of one of the spouses. If this assumption be correct, then it would follow that it should not be granted on the uncorroborated testimony of one spouse contradicted by the testimony of the other. We do not believe this is or should be the law.

■ In our opinion, the evidence may be full and satisfactory within the meaning of Art. 4632, even though the evidence be only the uncorroborated testimony of one of the spouses contradicted by the other. Wynn v. Wynn, Tex.Civ.App., 251 S.W. 349; Tinnon v. Tinnon, Tex.Civ. App., 278 S.W. 288; Cooksey v. Cooksey, Tex.Civ.App., 40 S.W.2d 947; Lowery v. Lowery, Tex.Civ.App., 136 S.W.2d 269; Day v. Day, Tex.Civ.App., 142 S.W.2d 394.

All of these cases, we think, announce the rule as we have stated it. It is conceded that in some the holding is weakened by the statement that in fact there was corroboration.

■ We do not mean to be understood as holding that a court is bound to grant a divorce on the uncorroborated testimony of the plaintiff, but that same may be done if the evidence is deemed full and satisfactory. It is our conception of the duty of this court to determine from the statement of facts as to whether the evidence is full and satisfactory. In the discharge of this duty we may not determine the credibility of witnesses. In short, a question of fact is presented to this court. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459.

Let us, then, attempt to analyze appellee's testimony. The real, material facts as testified by him, according to his testimony, occurred on the 20th and 21st of November, 1942. What occurred immediately before he says appellant slapped him, he fails to specify. He says she became angry. No act or word is mentioned, save the epithet and blow. Whether immediately preceding the blow and epithet appellee had done or said anything, he does not testify. It is a fair inference from the evidence, we think, that appellant neither spoke nor was able to read English. In any event, it appears that in taking her testimony an interpreter was used. It might be inferred from appellee's testimony that she spoke in English. The same is true as to the incident he testified as occurring on the evening of November 21, 1942, when he said he attempted to deliver the bond to her and she threw same at him. His testimony was that when this occurred she said: "Now, I am through with you and I don't want a God damn thing to do with you, and you can keep the bond, and she threw it at me." His testimony somewhat explains what preceded this outburst on the part of appellant. They were discussing the consummation of the property settlement to which he testified.

If appellant spoke in English on the two occasions in question, it indicates some command of the English language. If in Spanish we have only the benefit of appellee's translation of what she said. If in fact she slapped him, such action needs no translation. However, appellee in his testimony gave us no account of the violence of the blow he says he received on the occasion in question. This is probably not very material for the reason that it was the matter of the indignity imposed rather than its physical effect.

■ We have carefully read and considered the evidence in the record respecting the action for divorce. Despite the weight the finding of the trial judge in this respect is entitled to, we are of the opinion that it intrinsically appears that same is not of that full and satisfactory character required by Art. 4632.

It is possible, we think, that on another trial the evidence may be more fully developed. It has therefore been decided to reverse and remand the action as to the divorce. This action necessarily reverses the judgment in so far as same was appealed from as to the property rights of the parties.

It is, therefore, ordered that the judgment appealed from be reversed and remanded for another trial.

WALTHALL, J., not participating.