Alex ANGERSTEIN, Appellant,

v.

Dolly ANGERSTEIN, Appellee.

No. 297.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 3, 1967.

Rehearing Denied Aug. 31, 1967.

Clyde W. Woody, of Woody & Rosen, Houston, Charles W. Tessmer, Dallas, for appellant.

Harry F. Maddin, of Cullen, Mallette, Maddin, Edwards & Williams, Victoria, Armond G. Schwartz, Hallettsville, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment granting a divorce to Dolly Angerstein, appellee, plaintiff below.

On April 15, 1965 we dismissed a prior appeal of this cause because the judgment there involved, dated January 29, 1965, was not final and appealable. Angerstein v. Angerstein, 389 S.W.2d 519, (Tex. Civ.App. Corpus Christi, 1965, n.w.h.). The instant appeal by Alex Angerstein is from a nunc pro tunc judgment rendered by the trial court on November 2, 1966.

Appellant's brief contains three points of error, the first two of which assert that the nunc pro tunc judgment was not validly rendered. Upon oral argument of this case, appellant agreed to withdraw his first two points, and thereafter the parties filed written stipulation so providing. No question as to the finality or appealability of said judgment is presented on the record before us. Therefore, we are now concerned only with appellant's point three and appellee's reply thereto.

Appellant's third point reads as follows:

"The trial court erred in granting Appellee a divorce, since the testimony before the court in support of Appellee's Petition for Divorce was not full and satisfactory."

Appellee's third counterpoint is as follows:

"The evidence before the Court in support of Appellee's Petition being full and satisfactory, the Trial Court did not err or abuse his discretion in granting Appellee judgment for divorce."

The trial court filed sixteen findings of fact and four conclusions of law. Findings numbers 14, 15 and 16 and conclusions 2, 3 and 4 do not relate to the divorce issues and are not material to this appeal. Findings 1–13 and the first conclusion of law read as follows:

## "FINDINGS OF FACT

"1. This Court has venue and jurisdiction of the parties and cause of action made the basis of this suit.

2. That plaintiff and defendant were legally married on March 12, 1919.

3. That there were two children born of this marriage, both of whom are adults over the age of twenty-one (21) years.

4. That plaintiff and defendant separated on September 28, 1961, and have not since lived together as husband and wife.

5. That the defendant requested a divorce from plaintiff on more than one occasion prior to their separation, stating that he hated her and loved her daughter-in-law more than anyone.

6. That defendant accused the plaintiff of immoral conduct and going to a place of prostitution.

7. That the defendant caused the plaintiff to be arrested and incarcerated against her will in the psychiatric ward of Citizens Memorial Hospital in Victoria, Texas, during which time the defendant cursed plaintiff and verbally *abrused* her and approached her in a menacing manner.

8. That about one year prior to the separation of plaintiff and defendant, defendant told plaintiff 'God damn your soul, I hope you rot.'

9. That the defendant cursed plaintiff on numerous occasions and indicated and stated that he had no love for her.

10. That the defendant has insisted that plaintiff is mentally ill and needs psychiatric treatment and has indicated that he wants her back so that she can be given psychiatric treatment.

11. That the evidence shows conclusively that the plaintiff is not mentally ill and there is no showing of need for psychiatric treatment.

12. That the conduct of the defendant toward plaintiff has produced, and was calculated to produce, fear, apprehension, nervousness, sleeplessness and weight loss in plaintiff.

13. I find that the defendant cursed and threatened plaintiff's sisters."

## "CONCLUSIONS OF LAW

"I conclude that the acts of defendant in cursing his wife on numerous occasions, expressing his lack of love for her, requesting her to get a divorce, accusing her of immoral conduct, requesting her to seek psychiatric treatment, causing her to be arrested and placed in a psychiatric ward, continually insisting on her need for further psychiatric treatment in the face of undisputed medical evidence indicating that the same is not necessary, approaching her in a threatening manner while cursing her and generally treating her in an *abrusive* manner, constitutes the defendant guilty of such excesses, cruel treatment and outrages of such a nature as to render their living together insupportable."

The testimony given by appellee and other witnesses supports the findings of fact made by the trial court. The testimony of appellant conflicted on many points with that of appellee, and was particularly contrary to findings 5, 6, 8, 9 and 13. Concerning finding number 7, appellant admitted that after appellee had left home and filed suit for divorce, he caused her to be arrested and incarcerated against her will in the psychiatric ward of Citizens Memorial Hospital in Victoria, Texas; however, appellant denied that he had cursed or verbally abused appellee while she was in the hospital. As to finding number 10 there was no substantial dispute, and it is supported by the testimony of appellant as well as appellee. Finding number 11 was strongly supported by the testimony of a psychiatrist and neurologist. Finding number 12 was not seriously disputed in the evidence.

Appellee testified in substance as follows: that she was married to appellant on March 12, 1919 and separated from him on September 28, 1961; that there had been no reconciliation and the parties had not lived together since then up to the date of her testimony on November 19, 1964; that she was sixty-nine years of age and her husband was seventy-two at the time of trial; that the parties had two grown married sons; that about the time of separation, appellant asked her for a divorce, as he had done many times previously; that she went to the home of one of her sons to make a telephone call where she

overheard a conversation between her son and appellant and heard a statement about "putting me away somewhere"; that prior to that time appellant had told her she had been seen going into a house of prostitution, which accusation was denied by appellee; that appellant cursed one of her sisters; that appellant would not buy her a television set nor an automobile to replace the 15 year old car which she had; that after she filed suit for divorce, appellant had her picked up by peace officers and placed in the psychiatric ward of the Citizens Memorial Hospital, Victoria, Texas; that she was treated by Dr. George Constant; that appellant came to visit her in the hospital, cursed her, started toward her, and a nurse had to intervene; that on prior occasions appellant told her he loved his daughter-in-law better than anyone else; that appellant said he didn't love appellee and would hate her until she died; that about a year before she filed suit for divorce, appellant told appellee he hoped her soul would rot; that appellee was afraid of appellant; that her health was affected; that her weight fell from about 140 pounds to around 114 when she left home; that appellant threatened to take her life about the time of the separation in 1961, and had made such threat before; that when she filed suit in September, 1961, appellee had concluded that she could not live with appellant any longer; that appellant's conduct made it impossible to live with him.

Appellant testified, among other things, to the following: that for many years it had been his practice to arise at 3:00 o'clock in the morning, to leave the house shortly thereafter, and work until about 7:30 or 8:00 o'clock at night; that when he got home from work at night his wife would not be there; that for about twenty years appellee was gone from home every night playing canasta and would return from about 11:00 o'clock P. M. to 1:00 A. M.; that appellant asked appellee to not be out so much and to be home earlier, but he did not try to stop her from going out;

that he seldom saw his wife during such period of time; that appellee wanted appellant to leave the doors unlocked after he went to bed, but appellant would not do this and would get up to let appellee in when she knocked on the door, and he didn't see her except on those occasions; and after he went back to bed his wife would sit up and drink coffee. Appellant denied that he had ever cursed his wife; or that he had accused her of immoral conduct; or that he had stated he wanted a divorce; or that he had stated he loved his daughter-in-law more than his wife; and generally denied most of the testimony given by appellee. Appellant further testified that it was his position that everything appellee said was because she was operating under some delusions; that she didn't intend to lie; that she was confused; that when appellee said that appellant had threatened her with a knife or gun or that he cursed her, that those things were figments of her imagination; that he was concerned about his wife's emotional problems and about getting her into a hospital; that she should be at home where he and his sons could help. Appellant said he did not want a divorce and could live harmoniously with his wife if she would go to a hospital and he treated for her emotional or nervous condition. Appellant conceded that after appellee filed suit for divorce and property division against him, he discovered that she was in Hallettsville; that he talked to a justice of the peace, the county attorney and the sheriff and arranged to have papers fixed up so that the sheriff would go and pick up appellee and take her to the psychiatric ward of a hospital; that this action was taken despite the fact that appellant was under a restraining order in the divorce case. There is no showing that any of these proceedings were valid or that appellant was accorded any kind of hearing before she was placed in the hospital.

Mrs. Gladys Brown, of Ft. Worth, Texas, a sister of appellee, testified among other things, that she and Mrs. Nelson, another sister, came to Victoria, Texas, in

1961 when appellee was in the Citizens Memorial Hospital, and talked to appellant about the matter; that when appellant was asked what was wrong, he stated that appellee had sued for divorce, that he was going to put her in the hospital or put her away; that appellant stated "I am going to put her away because she is not going to have this property." Mrs. Brown also testified that on such occasion appellant said that appellee had been seen going into a house of prostitution; that he kept cursing; that when Mrs. Nelson asked if there was anything wrong with appellee's mind, appellant ultimately said that there was not, but "she is my wife and I can do with her as I GD please."

Dr. George A. Constant, a neurologist and psychiatrist of Victoria, Texas, was called as a witness for appellee. His qualifications were stipulated. He testified in substance that he examined appellee in the Citizens Memorial Hospital at Victoria, Texas, from October 3rd to October 10th, 1961; that she was nervous, fearful, apprehensive and restless, but was well oriented as to time, place and persons; that she had no delusions nor hallucinations; that her reactions were normal under the conditions; that he took a history of appellee from her husband and son which, according to them, showed emotional instability and included many related facts which were not favorable to appellee on that subject; that he examined appellee after she had been picked up under court order and brought to the hospital; that it is not unusual for a person who is involuntarily hospitalized to be in a state of nervous activity; that appellee's reaction was not out of keeping with the situation; that her perception was normal and she accepted reality; that he treated her by psychotherapy and by giving her tranquilizers; that she improved rapidly after 24–36 hours; that after a week of examination and treatment his diagnosis was that appellee had a personality disturbance because of the situation she found herself in; that there was no psychosis or

neurosis; that appellee said she and her husband were not getting along well and she felt the best thing to do would be to get out of the situation; that after appellee was released from the hospital, she came to see him about her medication; that he recommended she stay on the medications he had prescribed for her until he saw her again; that he had made psychological tests on appellee and all they revealed was that she was of somewhat anxious and apprehensive nature; that ordinarily it requires about a week to work up a patient completely and for running of studies, observation and evaluation; that he made a complete examination of appellee; that he made a final diagnosis of a transit personality disturbance, which means that a person gets upset and disturbed because of a situation he finds himself in.

Mrs. Lena Beck, called as a witness by appellee, testified in substance as follows: that she was one of the nurses for appellee while she was in the hospital at Victoria, Texas, in October 1961; that appellant visited appellee several times; that on one of such visits the witness saw appellant with his hands in the air and cursing appellee; that the witness walked between appellant and appellee, pushed appellee down on the bed and asked appellant to leave; that appellee was excited at that time; and that appellant then left the room.

■ In Robinson v. Robinson, 235 S. W.2d 228, 229 (Tex.Civ.App., San Antonio, 1951, n.w.h., opinion per Norvell, J.) the court in passing upon a contention that the evidence of cruel treatment was not of that full and satisfactory character required by Art. 4632, Vernon's Ann.Civ.St., held as follows:

"This point raises a question of fact to be passed upon by this Court, and 'It is our duty to determine as to the quality of the evidence in this respect.' Mayen v. Mayen, Tex.Civ.App., 177 S.W.2d 240, 242. In determining whether or not the

evidence meets the full and satisfactory test, however, our position differs from that of the trial court in that this Court has no authority to pass upon the credibility of witnesses. Bell v. Bell, Tex. Civ.App., 135 S.W.2d 546; Mayen v. Mayen, supra; Mortensen v. Mortensen, Tex.Civ.App., 186 S.W.2d 297; Moore v. Moore, Tex.Civ.App., 213 S.W.2d 724; Nix v. Nix, Tex.Civ.App., 218 S.W.2d 242; Ellis v. Ellis, Tex.Civ.App., 225 S W.2d 216."

 In Alexander v. Alexander, 373 S.W.2d 800, 803 (Tex.Civ.App., Corpus Christi, 1964, n.w.h.) this Court, speaking through Chief Justice Green said:

"It is true that for a divorce to be properly granted on the gound of cruelty, under Article 4629(1), acts constituting excesses, outrages or cruel treatment must be established by full, clear and satisfactory evidence. However, the sufficiency and weight of the evidence necessary to meet these requirements must of necessity be left to the sound discretion of the trier of facts, *subject, of course, to review by the appellate courts.* McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459; Hogue v. Hogue, Tex.Civ.App., 242 S.W.2d 673; Mobley v. Mobley, Tex.Civ.App., 263 S.W.2d 794; Daughtry v. Daughtry, Tex.Civ.App., 312 S.W.2d 957; Mc-Ginnes v. McGinnes, Tex.Civ.App., 322 S.W.2d 417; Guerra v. Guerra, Tex. Civ.App., 327 S.W.2d 625; Batte v. Batte, Tex.Civ.App., 349 S.W.2d 112; Armstrong v. Armstrong, Tex.Civ.App., 350 S.W.2d 348.

"As stated in McCullough v. Mc-Cullough, Sup.Ct., supra, 'It is the settled law of this state that the cruel treatment provided by our statute as a ground for divorce is not confined to physical violence alone, but may consist of a series of studied and deliberate insults and provocations.'

"False charges of unchastity or infidelity made by a husband to his wife, or even a single deliberately false accusation, may constitute such cruelty as will entitle the wife to a divorce. Fomby v. Fomby, Tex.Civ.App., 329 S.W.2d 111; 20 Tex. Jur.2d, Divorce and Separation, Sec. 20, p. 368."

See, also, Emerson v. Emerson, 409 S.W.2d 897 (Tex.Civ.App., Corpus Christi, 1966, n.w.h.), in which we affirmed the granting of a divorce to the husband under Art. 4629(1), V.A.C.S.

An examination of the entire record leads us to the conclusion that the evidence reaches the quality of being full and satisfactory and that the trial court did not err in granting the divorce.

Affirmed.