## BROWN v. BROWN.
### No. 13621.

Court of Civil Appeals of Texas. Dallas.
June 1, 1945.

Carrington, Gowan, Habberton, Johnson & Walker, and Crane & Crane, all of Dallas, for appellant.

Spafford & Spafford, of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from a judgment granting divorce and ordering sale of community property. The decree is based upon appellee's pleadings and evidence that appellant was guilty of a course of unkind, harsh and tyrannical conduct toward him, which continued with slight intermission from about a year after their marriage on October 1, 1919, to final separation on October 21, 1943; and that the community estate, consisting wholly of personal property, other than their homestead, is not susceptible to partition in kind, and should be sold through receivership.

The suit was filed August 26, 1943. On trial to the court without a jury, judgment was entered about a year later, granting the divorce and ordering the bulk of the community property sold, other than the homestead, and the proceeds divided equally between the two spouses. Proper allowances were made for maintenance and support of the wife during pendency of the suit, $1,000 for her attorney's fees, and title to the homestead. All costs, other than the auditor's fee of $2,000, were taxed equally between appellant and appellee; the auditor's fee taxed three-fourths against the wife and one-fourth against the husband. A receiver was appointed, duly qualified, and is in possession of the property pending sale under further orders of the court. The appeal is predicated on errors of the trial court, (1) in granting the divorce, and (2) in ordering sale of the community property rather than a partition in kind by commissioners of partition.

Upon review of the voluminous record here presented, the conclusion is inescapable that the property involved and the welfare of the business venture of the two spouses, which, by their joint contribution of efforts and ability, has grown to an immense capital, yielding net profits in excess of $10,000 per year, is the primary cause of the disruption of their marital union, which otherwise might have been a happy one. The wife is a gifted business woman, assisting her husband in the management and control of their joint enterprise to the detriment of her physical well-being and home life. The husband attributes his wife's ill-temper and disagreeable conduct toward him to her over-zealous interest in the welfare of their business affairs, taking issue in argument with him and his employes in the routine management and conduct of their business. The attitude of the husband is that he, being the head of the family, is endowed by law with the right to manage and control the community property to the exclusion of the wife, and his authority should not be ques-

tioned or countered by his wife. Illustrative of his attitude, he gave testimony at the close of 557 pages of the statement of facts: "I think I deserve the business, it represents sixteen years of my life. I chose the business instead of the family. She has known that for three solid years; her conduct has forced me to take that attitude. I am entitled to follow through my own ambitions; I am going to employ the people I want and protect them from insult and injury." Then again, he testified: "If we did divide the things, (assets), the fight that has existed would continue to exist between me and the boys (their sons), it will continue indefinitely, and we would be fighting all over the streets of Dallas; my wife and the boys and myself would be competitors, and that would cause this friction to continue, as I say, indefinitely."

█ It will serve no useful purpose here to relate the numerous uncomplimentary charges, accusations and humiliating acts and conduct, brought into the trial by the husband against the wife, augmented to such a degree as to cause him to retaliate in kind; nor will it be of useful purpose to relate the many times the husband is charged with personal violence, unkind, harsh and tyrannical conduct toward his wife, or his numerous admissions of criminal assaults against her, in some prostrated her upon the ground as to produce her unconsciousness. From the viewpoint of each of the spouses, the other is guilty of the discord existing between them—mutual combats growing out of their business affairs. Therefore, where it appears that the conduct of each spouse towards the other approaches mutuality, and both have indulged therein, a divorce should not be decreed upon the ground of cruelty to either of the parties. Beck v. Beck, 63 Tex. 34. The doctrine that denies such decrees rests upon the established principle "that a person should not, as a rule, be allowed to recover for the wrongful act of another if his own guilt is attached thereto; it is founded on the soundest reasons of morality and justice." 15 Tex.Jur., p. 493, Sec. 42. A careful reading of the statement of facts shows a mutuality of misconduct and recrimination. It appears that the husband violated the marriage contract in a manner similar in nature to the charges against the wife, differing in degree—perhaps more violent; he justifying his guilt on the ground that the cruelty complained of had its beginning in private

by the wife in arguing, fussing and nagging. Furthermore, the undisputed evidence shows that all acts of alleged cruelty committed by the wife against the husband, and of the husband against the wife, have been condoned, or forgiven. In all instances the husband has asked the wife's forgiveness, which was freely given, and the two continued their living together in the same house. On September 30, 1943, a few weeks before the filing of this suit, the husband, in a letter written to his wife on the occasion of her birthday and their wedding anniversary, said: "I wish you and Charles (their son) many more happy birthdays, and wish you many more happy wedding anniversaries. I am very thankful that you are still with me, and I look forward to many happy years together in the future." At the same time he also arranged to have a dozen red roses sent to his wife, with a card reading: "In honor of 23 years of devotion"; and then, on October 19-20, 1943, the husband spent the night and cohabited with his wife, which is a most conclusive evidence of condonation. Such acts—the voluntary renewal of the most intimate relation between husband and wife—condones and forgives all wrongs, real or fancied, of which the two may have been guilty. McLemore v. McLemore, Tex.Civ.App., 285 S.W. 693.

█ Thus giving a fair appraisal of the entire statement of facts in this appeal, the essential elements upon which divorce should be granted are lacking. The specific acts of cruelty charged to Mrs. Brown, culminating in mutual combats by Mr. Brown, evidently were not sufficient to make their further living together insupportable. The evidence shows that the parties lived and cohabited together after the occurrence of each of the specific acts. Indeed, Mr. and Mrs. Brown may not live together; but divorces are not granted for the mere reason that the parties may not or cannot live together without quarreling, fussing and fighting. The cruelty must not approach mutuality, nor be exercised sometimes by the one and sometimes by the other, though differing as to which one began the discord. Courts cannot enforce marriage contracts, to the extent of making people live together, although, in many cases, that might be a happy solution; but it is the function of courts to grant divorcement only when the facts meet the requirements of the law enacted by the Legislature.

■ We are of the opinion that the divorce should not have been granted to this union, thus making the ancillary decrees ordering sale and division of the community estate of no avail.

■ The community property ordered sold through receivership consists of cigarette vending machines placed in restaurants, drugstores, hotel lobbies, and other advantageous locations; and stock in corporations chartered to handle cigarettes incident to servicing the machines. The only reason assigned in the record for sale of the machines and stock certificates, instead of an equitable division in kind through commissioners, is that, in the division, the wife and their two sons, who are now serving in our Armed Forces across the seas, would in time join forces, thus placing them in competition with the appellee. Manifestly, such assigned reason, if enforced, would stifle competition, and is clearly inequitable in the manner of division. The property is personalty, of separate units; hence susceptible to partition in kind. The receivership should be set aside.

The judgment of the court below is reversed, and judgment here rendered denying divorce; all ancillary orders set aside; and the cause remanded to the court below with instructions to direct the receiver to make full and final report and settlement of the property in his possession belonging to the estate in accordance herewith.

Reversed and rendered with instructions.

YOUNG, Justice (dissenting).

The allegations and proof on part of appellee (plaintiff) through 556 pages of testimony went far beyond facts ordinarily incident to an action for divorce. The violence, bitterness, intensity of acts committed, protracted duration of marital troubles, all were extreme; and no question could possibly be raised of the full and satisfactory state of the record, even from the vantage ground of an appellate court. The trial court after a patient and extended development of facts, and exhaustive examination of many witnesses, has simply chosen to believe the testimony of appellee and the witnesses offered in his behalf; in which connection and in detailed findings such court found against appellant's plea of condonation.

Once the full and satisfactory evidence rule has been met, all well considered Tex-

as decisions hold that the reviewing court is forbidden (under Art. 4632, Vernon's Ann.Civ.St.) to go further and pass upon the credibility of witnesses and the weight to be given their testimony. See Mortensen v. Mortensen, 186 S.W.2d 297, where the point is ably discussed and all decisions seemingly in conflict reconciled by Judge Norvell of the San Antonio Court.

In short, there is nothing in this voluminous record indicating or tending to show that the eminent trial judge has abused his judicial discretion either in grant of divorce or division of community property. The broad powers of a trial court in regard to both, under Art. 4638, Vernon's Ann.Civ.St., are evidenced by cases too numerous for citation. I respectfully dissent from the majority opinion.